**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| BEAN MAINE LOBSTER, INC., MAINE LOBSTERMEN'S ASSOCIATION, INC., MAINE COAST FISHERMEN'S ASSOCIATION, INC., MAINE LOBSTER AND PROCESSING, LLC d/b/a ATWOOD LOBSTER, LLC., and BUG CATCHER, INC., <br><br> Plaintiffs <br><br> v. <br><br> MONTEREY BAY AQUARIUM FOUNDATION, <br><br> Defendant | CIVIL ACTION NO. 2:23-CV-00129-JAW |

**DEFENDANT MONTEREY BAY AQUARIUM FOUNDATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FED. R. CIV. P. 12(b)(2)) OR, IN THE ALTERNATIVE, TRANSFER VENUE DUE TO FORUM NON CONVENIENS (28 U.S.C. 1404(a)), OR DISMISS UNDER MAINE'S ANTI-SLAPP STATUTE (14 M.R.S. § 556), OR DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FED. R. CIV. P. 12(b)(6)) WITH MEMORANDUM OF LAW**

NOW COMES the Defendant, Monterey Bay Aquarium Foundation ("MBAF"), by and through undersigned counsel, and hereby moves to dismiss or transfer the above-captioned matter pursuant to Federal Rule of Civil Procedure 12(b)(2) and 28 U.S.C 1404(a). MBAF requests this case be dismissed for lack of personal jurisdiction or, in the event this Court finds that MBAF is subject to jurisdiction in Maine, to transfer venue to the Northern District of California. In the event this Court determines that transfer is inappropriate and retains venue, MBAF requests this Court to dismiss the Complaint under Maine's anti-SLAPP statute or, in the

alternative, to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim upon which relief can be granted. This Motion is supported by the Declarations

of Rob Mann and Jennifer Dianto Kemmerly, and documents of which MBAF requests this

Court take judicial notice.[1] The grounds for dismissal and transfer are more fully set forth in the

following incorporated Memorandum of Law.

---

[1] MBAF requests this Court take judicial notice of information contained in documents that are attached as exhibits to, and cited in, the Memorandum of Law. MBAF does not ask this Court to take judicial notice of the veracity of the information, rather, MBAF only requests this Court to take judicial notice of the documents' existence and authenticity. The categories of documents for which MBAF seeks judicial notice are: (1) government publications, including government websites (*see Fortuna v. Town of Winslow*, 607 F. Supp. 3d 29, 34-36 (D. Me. 2022)); (2) federal court pleadings and public documents reported in the Federal Register. *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15-16 (1st Cir. 2003) (a court "may look to matters of public record in deciding a Rule 12(b)(6) motion.") (*quoting Boateng v. InterAmerican Univ.*, 210 F.3d 56, 60 (1st Cir.2000)); Fed. R. Evid. 201; and (3) newspaper articles. *Franchini v. Bangor Publ. Co.*, 560 F. Supp. 3d 312, 317 (D. Me. 2021) (the court took "judicial notice of other published news reports from the relevant time periods.") (citing F.R.E. 201(b) & (c)(1); *Benak ex rel. All. Premier Growth Fund v. Alliance Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (courts may "take notice of newspaper articles for the fact of their publication")).

## MEMORANDUM OF LAW

### I.    INTRODUCTION

This lawsuit marks another milestone in a highly-charged, years-long, political, and legal saga pitting ocean conservationists against the Northeast lobster industry. Plaintiffs, a consortium of Maine lobster industry allies, seek to punish and silence MBAF for exercising its First Amendment rights of petition and speech to effect public policy. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 909 (1982). Specifically, Plaintiffs are suing MBAF because of its recommendation to consumers and businesses against purchasing lobster to save the North Atlantic right whale from extinction. MBAF's Seafood Watch program, which rates seafood based on environmental impact, published a "red" rating for lobster from Canadian and U.S. lobster fisheries, including Maine, because of the risk of death and injuries to endangered North Atlantic right whales by lobster gear entanglements. The rating so inflamed passions that, only days after it was announced, Governor Janet Mills, Senators Susan Collins and Angus King, and Representatives Chellie Pingree and Jared Golden demanded that MBAF reverse the red rating.[2] MBAF respectfully declined and steadfastly stood by its recommendation.[3]

When MBAF did not succumb to political pressure, Plaintiffs filed their meritless defamation claim, seeking monetary damages and an unconstitutional injunction against MBAF's free speech. Plaintiffs base their claim on nine alleged false and defamatory statements (the "Statements") about lobster fishing practices that were published in MBAF's press release announcing the red rating (Complaint, Ex. 1), its report on which the rating was based (*Id.*, Ex. 2), and subsequent comments to the press. (*Id.*, ¶ 52, fn 29.) Plaintiffs' central argument is there

---

[2] https://www.king.senate.gov/imo/media/doc/me_delegation_letter_to_monterey_bay_aquarium_re_red-listing_090822.pdf. (Declaration of Jennifer Dianto Kemmerly ("Kemmerly Decl."), Ex. A)
[3] https://www.montereybayaquarium.org/newsroom/press-releases/response-from-monterey-bay-quarium-on-calls-to-reverse-recent-seafood-watch-red-ratings (Kemmerly Decl., Ex. B)

exists no scientific evidence supporting MBAF's claim that right whales are at risk of becoming entangled in Maine lobster fisheries' lines. Plaintiffs would have this Court believe that Maine lobster fisheries pose no threat to the right whale, and they insist that documented entanglement deaths and injuries occurred in *other* fisheries. Numerous scientists, who are not affiliated with MBAF and on whose research MBAF relied for the red rating, disagree. Those experts conclude that entanglements *do* occur in Maine and threaten the right whale's extinction. The data in support of this claim was summarized in a September 17, 2019 letter to Senator Collins and other Maine elected officials from 18 ocean scientists and conservationists (who are not affiliated with MBAF). They concluded: **"[T]he number of North Atlantic right whales in Maine waters, the number of entanglements that are occurring in Maine waters, and the severity of all entanglements and their effects upon the right whale population are all significantly underestimated."**[4]

Plaintiffs' Complaint should be dismissed for many reasons, the first being this Court lacks jurisdiction over MBAF, whose staff prepared and published the Statements at issue in California. Even if this Court finds jurisdiction over MBAF, venue should be transferred to the Northern District of California ("N.D. Cal."), where MBAF is located, events culminating in this litigation occurred, and this action and its twin case, filed by Massachusetts lobstermen in a Louisiana federal court,[5] should be consolidated. MBAF has already moved the United States District Court, Eastern District of Louisiana to transfer venue of the Massachusetts plaintiffs'

---

[4] https://www.nrdc.org/sites/default/files/media-uploads/scientist_letter_on_right_whales_and_lobster_gear_risk_in_maine.pdf (cited by Report as Kraus et al. 2019) (Kemmerly Decl., Ex. C)

[5] *Sawyer, et al. v. Monterey Bay Aquarium, et al*, United States District Court, Eastern District of Louisiana, Case No. 2:23-cv-00796; the complaint may also be found at https://lobstermen.com/wp-content/uploads/2020/08/Filed-Class-Action-Complaint.pdf (Attached hereto as Ex. 1).

action, which is based on the same alleged defamatory publications before this Court, to the N.D. Cal. and is awaiting the court's ruling.

In the alternative, if this Court finds jurisdiction over MBAF but declines to transfer venue, this Court should dismiss the Complaint under Maine's anti-SLAPP statute (14 M.R.S. § 556) or dismiss it under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to allege a cognizable defamation claim. The Statements concern fishing practices, management of the fisheries, and inadequate regulations, none of which are specifically directed at Plaintiffs and therefore are **not "of or concerning" Plaintiffs and, neither Maine nor the First Amendment recognize group libel**. Next, the Statements qualify as **non-actionable opinion**. MBAF's opinions that lobster should be avoided and the Northeast lobster fisheries are poorly managed are not statements of fact susceptible to being proven true or false, and MBAF plainly admits when it lacks certain conclusive evidence to support those beliefs. In short, **none of the Statements imply false facts, and instead, MBAF concedes when certain facts are unknown**. Furthermore, the Statements are based on data and conclusions published by scientists in the context of legislative and judicial proceedings, as well as in scientific journals, and by government agencies. Because MBAF's conclusions regarding the dangers posed to the right whale by the lobster industry are based on disclosed facts and findings from scientists, government agencies, and judicial proceedings—the accuracy of which MBAF had no reason to doubt—**Plaintiffs cannot overcome their burden of proving "fault" – actual malice** (i.e., that despite MBAF's reliance on myriad experts and their findings, MBAF knew the Statements were false or recklessly disregarded that they were false) **or negligence**. Finally, even if Plaintiffs' claim for damages survives this Motion to Dismiss, **their request for an injunction against MBAF's speech must be denied as an unconstitutional prior restraint against speech**.

## II.    FACTUAL BACKGROUND

Plaintiffs are lobster industry allies from Maine and include Bean Maine Lobster, Inc., Maine Lobstermen's Association, Inc., Maine Coast Fishermen's Association, Inc., Maine Lobster and Processing, LLC D/B/A Atwood Lobster, LLC, and Bug Catcher, Inc. (Complaint, ¶¶ 14-18) Defendant MBAF is a nonprofit corporation incorporated under the laws of the State of California and headquartered in Monterey, California. (*Id.,* at ¶ 19) As Plaintiffs state in their Complaint, "[MBAF] runs a program called 'Seafood Watch,' which assigns ratings to different varieties of seafood based on environmental impact and sustainability." (*Id.,* at ¶ 7)

Plaintiffs' claims arise from publications by MBAF concerning the risks posed by lobster fishing to North Atlantic right whales. MBAF's Statements follow years of political and judicial activity (not involving MBAF) devoted to the issue, as well as resultant media coverage,[6] including:

- The lobbying of Senator Collins and other elected officials in Maine by 18 scientists "with expertise on the North Atlantic right whale … and its conservation" in September 2019 over Maine's efforts to "undermine proposed conservation measures critical to the North Atlantic right whale's survival."[7]

- A federal case filed by conservation nonprofits against the federal government for failing to issue a Biological Opinion ("BiOp") sufficient to ensure operations of lobster fisheries (including Maine's fishery) will not jeopardize the continued existence of the right whale. *Ctr. for Biological Diversity v. Raimondo*, 610 F. Supp. 3d 252, 263 (D.D.C. 2022). The Maine Lobstermen's Association, a plaintiff in the instant action, intervened in the BiOp litigation, as well as the State of Maine and the Maine Lobstering Union. *Id.,* at. 265. The case, which followed an earlier action over a prior version of the BiOp, culminated in summary judgment, with the court ruling on July 8, 2022 that the then-current BiOp, like the previous litigated version, was invalid. *Id.,* at 258*; Ctr. for Biological Diversity v. Ross*, 310 F. Supp. 3d 119 (D.D.C. 2018); *see also Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.,* No. 21-2509 (JEB), 2022 U.S. Dist. LEXIS 169246 (D.C.C.

---

[6] *See, e.g.,* https://www.pressherald.com/2021/12/11/the-lobster-trap-2/ (Attached hereto as Exhibit 2); https://www.washingtonpost.com/climate-environment/2022/10/25/north-atlantic-right-whale-population-climate-change/ (Attached hereto as Exhibit 3); https://www.motherjones.com/environment/2018/02/the-trump-administration-just-got-sued-over-an-unusual-mortality-event-in-the-ocean/ (Attached as Exhibit 4)
[7] https://www.nrdc.org/sites/default/files/media-uploads/scientist_letter_on_right_whales_and_lobster_gear_risk_in_maine.pdf (cited by Report as Kraus et al. 2019) (Kemmerly Decl., Ex. C)

4

Sept. 8, 2022) In its opinion, the court noted, "**just around 370 North Atlantic right whales remain in existence. For centuries, these whales were imperiled by excessive hunting, but today the greatest human-caused threat comes from entanglement in fishing gear**." *Ctr. for Biological Diversity,* 310 F. Supp. 3d at 257. (emphasis added)

- Subsequent to the July 8, 2022 ruling, Congress passed an act supported by Maine elected officials,[8] that ultimately gave the lobster fisheries five more years to implement regulations conforming to the ESA's mandate of preventing the extinction of right whale. Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, Div. JJ, § 101(a).[9]

In September 2022, MBAF posted a "red" rating for lobster caught in Canadian and U.S. fisheries, recommending that consumers and businesses avoid purchasing them because of the risks the lobster fisheries pose to the right whale. (Complaint, at ¶ 8) The rating includes lobster caught in the Gulf of Maine/Georges Bank region, where the Maine lobster fishery operates. (*Id.*) The red rating was included in a press release posted on MBAF's website on September 5, 2022. (*Id.*, at ¶ 47) Entitled "Seafood Watch Assigns Red Ratings to Canadian and U.S. Fisheries That Pose Dire Risk to the Endangered North Atlantic Right Whale" (the "Press Release," attached as Ex. 1 to Complaint), the Press Release explains the red rating is based on "significant risks of entanglement in pot, trap, and gillnet fisheries to the endangered North Atlantic right whale and the lack of timely, effective management necessary to mitigate the entanglement risks and promote recovery of the species" and includes supporting data. (*Id.*)

In conjunction with the Press Release, MBAF published online an extensive report entitled "American Lobster, Report ID 524" explaining the red rating. (Complaint, Ex. 2) The Report "provides an analysis and a recommendation for American lobster…in the United States Northwest Atlantic region." (*Id.*, p. 5) The Report scores lobster fisheries' impact on other

---

[8] https://www.maine.gov/governor/mills/news/maine-delegation-governor-mills-announce-lifeline-maines-lobster-industry-secured-government (Attached hereto as Exhibit 5)
[9] https://www.federalregister.gov/documents/2023/02/03/2023-02185/taking-of-marine-mammals-incidental-to-commercial-fishing-operations-atlantic-large-whale-take  (Attached hereto as Exhibit 6)

species, including mortality or injury. (*Id.*, p. 19) Although other species of whales, such as the Minke, are found to be largely unaffected by lobster fisheries, the Report expresses grave concern over survival of the right whale. The right whale is listed as "Endangered" under the Endangered Species Act ("ESA") and "Critically Endangered" by the International Union for the Conservation of Nature because it is "considered to be facing an extremely high risk of extinction in the wild." (*Id.*, p. 39) Experts estimate no more than 368 rights whales remain, and some believe the number is less. (*Id.*, pp. 19 & 42 (Figure 11); Complaint, Ex. 1)

The Press Release states, "Data show that entanglement in fishing gear is the leading cause of injury and death to this endangered species," summarizes the data, and cites the original governmental and scientific sources (with hyperlinks) on which MBAF relied:

- Fewer than 340 North Atlantic right whales exist today – and their numbers are decreasing every year (Pettis HM, Pace RM, Hamilton PK 2022).[10]

- For the North Atlantic right whale population to recover, the average number of whales injured or killed by human-related activity must be less than one whale per year (Hayes et al. 2022).[11] This number has been exceeded almost every year since 1995 (NOAA).[12]

- U.S. and Canadian fisheries, combined, deploy up to 1 million vertical lines throughout North Atlantic right whale migratory routes, calving, and foraging areas (Hayes SA, Gardner S, Garrison L, Henry A, Leandro L 2018).[13]

- Over 80 percent of North Atlantic right whales have been entangled in fishing gear at least once (Knowlton AR, Hamilton PK, Marx MK, Pettis HM, Kraus SD 2012).[14]

- More than 90% of entanglements cannot be linked to a specific gear type, and only 12% of entanglements can be linked to a specific location (Knowlton et al. 2012;[15] Knowlton

---

[10] https://www.narwc.org/uploads/1/1/6/6/116623219/2021report_cardfinal.pdf ) (Kemmerly Decl., Ex. D)
[11] https://repository.library.noaa.gov/view/noaa/45014  (Kemmerly Decl., Ex. E)
[12] https://www.fisheries.noaa.gov/national/marine-mammal-protection/marine-mammal-stock-assessment-reports-species-stock (Kemmerly Decl., Ex. F)
[13] https://sfw-images.s3-us-west-2.amazonaws.com/reportsresources/802/references/Hayes%20et%20al%202018_NARW%20evaluating%20recovery%20challenges%20in%202018.pdf (Kemmerly Decl., Ex. G)
[14] https://www.int-res.com/abstracts/meps/v466/p293-302/ (Kemmerly Decl., Ex. H)
[15] *Id.*

et al. 2019;[16] Kraus et al. 2019).[17] Until there is more evidence, all of the fisheries using this gear are considered a risk (NMFS 2021).[18]  (Complaint, Ex. 1)

The Report expands on the data included in the Press Release. The Report likewise cites to the published findings of governmental and scientific studies (with hyperlinks) from where the data was sourced. The Report is faithful to the original sources, which corroborate the Report's findings. Some examples include:

- Research by scientists from the National Oceanic and Atmospheric Administration ("NOAA") and data published in the Ecology and Evolution journal support MBAF's claim that the decline in the species is "unknown but several factors are likely contributing to the declining health of North Atlantic right whale, including climate-related shifts in prey distribution, anthropogenic noise, pollution, vessel strikes, and entanglement in fishing gear (Pace et al. 2017)[19] (NOAA 2019c)."[20] (Complaint, Ex. 2 p. 39)

- A report from ICES Journal of Maine Science supports MBAF's claim that vessel strikes and entanglement (from pot/trap and anchored gillnet fisheries) are the two leading causes of mortality and serious injury to right whales, with entanglements increasing over the past decade (Moore 2019).[21] (*Id.*, p. 40)

- The number of right whale entanglements is severely underestimated (Kraus et al. 2019).[22] (*Id.*, p. 40-41) The original source for this statement, a September 17, 2019 letter from 18 scientists and conservationists addressed to Senator Collins and other Maine elected officials focused on Maine fisheries in particular: "[T]he number of North Atlantic right whales in Maine waters, the number of entanglements that are occurring in Maine waters, and the severity of all entanglements and their effects upon the right whale population are all significantly underestimated."[23]

---

[16] https://www.greateratlantic.fisheries.noaa.gov/protected/whaletrp/trt/meetings/October%202018/4 knowlton-right_whale_scarring_trt-10-10-2018.pdf (Kemmerly Decl. Ex. I)
[17] https://www.nrdc.org/sites/default/files/media-uploads/scientist_letter_on_right_whales_and_lobster_gear_risk_in_maine.pdf (Kemmerly Decl., Ex. C)
[18] https://www.fisheries noaa.gov/resource/document/biological-opinion-10-fishery-management-plans (Kemmerly Decl., Ex. J)
[19] https://onlinelibrary.wiley.com/doi/10.1002/ece3.3406 (Kemmerly Decl., Ex. K)
[20] https://www.fisheries noaa.gov/national/marine-mammal-protection/marine-mammal-stock-assessment-reports (Kemmerly Decl., Ex. L)
[21] https://academic.oup.com/icesjms/article/76/4/781/5288134 (Kemmerly Decl., Ex. M)
[22] https://www.nrdc.org/sites/default/files/media-uploads/scientist_letter_on_right_whales_and_lobster_gear_risk_in_maine.pdf (Kemmerly Ex. C)
[23] *Id.*

- A 2021 NOAA report supports MBAF's claim that at least 9 right whale deaths and 14 serious injuries were caused by entanglement. (*Id.*, pp. 41-42 (Figure 11))[24]

In addition to employing data from reliable scientific sources, MBAF also invited various stakeholders in ocean conservation and the lobster industry to review and comment on the Report before it was released. (Kemmerly Decl., ¶ 4) The peer review was conducted by nine scientists from federal management agencies (including the National Marine Fisheries Service ("NMFS") (a division of the NOAA) and the Atlantic States Marine Fishery Commission), the Maine Department of Marine Resources, the Maine Lobstermen's Association (a plaintiff in this action), environmental NGOs, and a wholesale lobster supplier. (*Id.*) The stakeholders exchanged data, but they reached different conclusions over the risks posed to right whales by lobster fisheries. (*Id.*)

Despite the parties' disagreement, there is no question that MBAF acted with great care and consideration at every stage in producing the Report and choosing the rating, from collecting and analyzing the most sophisticated and relevant data, to cautiously drafting a fair and accurate summary of that information. (*Id.*, at ¶ 3) MBAF was careful to disclose when certain supporting evidence was unavailable. Indeed, **MBAF's ultimate conclusion about risks to the right whale did not lay blame on any specific fishery**. MBAF instead opined that the survival of the right whale necessitates avoiding lobster from all Northwest Atlantic lobster fisheries until more conclusive evidence emerges: **"Until there is more specific information available regarding which fisheries are responsible for the unattributed entanglements, Seafood Watch considers that all relevant fisheries that may overlap with [right whales] pose risks. Based**

---

[24] https://www.fisheries.noaa.gov/national/marine-life-distress/2017-2023-north-atlantic-right-whale-unusual-mortality-event (Kemmerly Decl., Ex. N)

8

on the available information and the significant risks to [right whales], the American

lobster fishery cannot be considered sustainable, and fishing mortality is scored a high

concern.” (Complaint, Ex. 2 p. 41)

Despite MBAF's best efforts at fairness and accuracy, Plaintiffs allege that MBAF

knowingly made several false statements that the Maine lobster fishery is responsible for right

whale injuries and mortalities. (*Id.*, ¶¶ 8-9) Plaintiffs argue MBAF bases its false claims on a

purposeful misrepresentation of scientific data. (*Id.*, at ¶¶ 64-66) For example, Plaintiffs assert

there has not been a single documented entanglement of a right whale in Maine lobster gear since

2004 and right whales are rarely found in Maine lobster fisheries. (*Id.*, at ¶¶ 31, 54) Plaintiffs

claim MBAF failed to cite a single instance of a right whale being killed, entangled, or otherwise

harmed by Maine lobster gear since 2004. (*Id.*, at ¶ 91) Plaintiffs allege they have suffered

economic harm because MBAF leveraged its significant influence to pressure consumers and

businesses, including major commercial lobster purchasers, into cutting off business with

Plaintiffs. (*Id.*, at ¶¶ 12, 82-84) Plaintiffs also allege the price of American lobster dropped after

MBAF published its red rating, causing them further economic harm. (*Id.*) They contend they

have suffered reputational damage, loss of good will, and loss to the brand value of Maine

lobster. (*Id.*, at ¶ 90)

On March 14, 2023, Plaintiffs filed suit against MBAF asserting a single cause of action

for defamation based on the nine Statements. For the Court's ease, please find every Statement at

issue in the below chart:

| No. | Alleged Defamatory Statement |
| --- | --- |
| 1. | “At this time, each fishery using this gear is putting this protected species [i.e., the right whale] at risk of extinction.” |
| 2. | “No one wants to know their appetite for seafood is driving a species to extinction.” |

| 3. | "The seafood [rated Avoid] is caught or farmed in ways that harm other marine life or the environment. There's a critical conservation concern or many issues need substantial improvement." |
|---|---|
| 4. | "[M]anagement measures and the Atlantic Large Whale Take Reduction Plan have not been successful at reducing serious injury and mortality to the North Atlantic right whale[.]" |
| 5. | "Based on the available information and the significant risks to NARW, the American lobster fishery cannot be considered sustainable." |
| 6. | "The updated assessments highlight significant risks of entanglement in pot, trap, and gillnet fisheries to the endangered North Atlantic right whale and the lack of timely, effective management necessary to mitigate entanglement risks and promote recovery of the species." |
| 7. | That Seafood Watch reviewed "all available scientific data" and followed a "rigorous, transparent, science-based process to evaluate" the Maine lobster fishery. |
| 8. | "According to Seafood Watch standards, when fisheries pose a high risk of harm to marine life or the environment and appropriate management measures are not in place, they are assigned a red rating." |
| 9. | That consumers should "avoid" and "take a pass" on purchasing lobster and lobster products caught in the Gulf of Maine/Georges Bank region on the basis of these false statements. |

(*Id.,* at ¶ 94) In addition to monetary damages, Plaintiffs seek an order from this Court compelling MBAF to remove and retract any and all alleged defamatory statements from its website and other locations where those statements are published. (*Id,.* at ¶¶ 109-111)

Plaintiffs assert this Court has personal jurisdiction over MBAF based on Maine's long-arm statute, 14 M.R.S.A. §704(A)(I) & §704(B) because, they claim, the "consequences of the Aquarium's defamatory statements are impacting thousands of Maine residents. The Aquarium could reasonably have anticipated litigation in Maine based on its tortious conduct." (*Id.,* at ¶ 23) Plaintiffs allege venue is proper in this district pursuant to 28 U.S.C. § 1391(b) "because this is

where Plaintiffs reside and where the injuries caused by the Aquarium's conduct have occurred."

(*Id.*, ¶ 24)

### III.    **THIS COURT LACKS PERSONAL JURISDICTION OVER MBAF**

This Court does not have personal jurisdiction over MBAF. A holding to the contrary would condone personal jurisdiction over every individual or corporation in America based on online speech about plaintiffs in states where the persons or corporations have never availed themselves of the benefit of doing business. This Motion to Dismiss with respect to jurisdiction is brought pursuant to Rule 12(b)(2), challenging personal jurisdiction under the "prima facie" standard of review. *See generally Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 674-75 (1st Cir. 1992); *Duncan v. O'Shea*, 376 F. Supp. 3d 115 (D. Me. 2019). Under the prima facie standard, "[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." *B.J. Tidwell Industries, Inc. v. Zawacki,* 645 F. Supp. 2d 7, 10 (D. Me. 2009) (internal quotation omitted), and must do so by "proving each fact necessary to show that jurisdiction exists." *Cossaboon v. Me. Med. Ctr.*, No. 1:08-cv-00260-JL, 2009 U.S. Dist. LEXIS 29905, at *4 (D.C. N.H. March 31, 2009), *aff'd  Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25 (1st Cir. 2010).

The jurisdictional facts that are considered include the plaintiff's allegations only so far as evidence supports them (*Cossaboon*, 600 F.3d at 31) because the prima facie showing "'must be based upon evidence of specific facts set forth in the record.'" *See United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 619 (1st Cir. 2001). The court "add[s] to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Mass. Sch. of Law v. ABA,* 142 F.3d 26, 34 (1st Cir. 1998). The plaintiff "ultimately bears the burden of persuading the court that jurisdiction exists." *Id.*

11

A federal court exercising diversity jurisdiction is "the functional equivalent of a state court sitting in the forum state." *Ticketmaster–New York. v. Alioto,* 26 F.3d 201, 204 (1st Cir. 1994). Therefore, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." *Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir. 1995).

Maine's jurisdiction over nonresident defendants is controlled by its long-arm statute, 14 M.R.S.A. § 704-A, and the Due Process Clause of Maine's Constitution, Me Const. Art. I, § 6-A; this results in Maine's jurisdictional reach being coextensive with the Due Process Clause of the United States Constitution, U.S. Const. Amend. 14 § 1. *Ouellette v. Sturm, Ruger & Co., Inc.*, 466 A.2d 478, 480-81 (Me. 1983). The First Circuit has recognized that where the forum's long-arm statute is "coextensive with the outer limits of due process," courts may then focus on "whether the exercise of personal jurisdiction comports with federal constitutional standards." *Sawtelle*, 70 F.3d at 1388.

The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established minimum contacts in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). While the "minimum contacts" inquiry is fact-specific and "will vary [depending on] the quality and nature of the defendant's activit[ies]," it is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The defendant's contacts cannot be merely "random," "fortuitous," or "attenuated." *Burger King Corp.*, 471 U.S. at 475. Jurisdiction cannot be created by the "unilateral activity" of the plaintiff or "of another party or a third person." *Id.*

12

There are two forms of personal jurisdiction: 1) "general jurisdiction," when the defendant maintains "continuous and systematic" contacts with the forum state, but those contacts are unrelated to the suit (*Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999) (citing *Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984))); or 2) "specific" jurisdiction, where the "cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Phillips Exeter*, 196 F.3d at 288 (1st Cir. 1999); *Harlow v. Children's Hospital*, 432 F.3d 50, 61 (1st Cir. 2005). Plaintiffs do not allege that MBAF has the type of continuous and systematic contacts with Maine that would support general jurisdiction. Rather, the Complaint's jurisdictional allegation alleges jurisdiction over MBAF based on the subject matter of "this litigation." (Complaint, ¶ 21) Consequently, to avoid dismissal, Plaintiffs must establish specific jurisdiction over MBAF. As set out below, Plaintiffs cannot meet the requirements for establishing specific jurisdiction over MBAF. Therefore, the Court should dismiss this action.

A.   **Plaintiffs Cannot Establish Specific Jurisdiction Over MBAF**

Specific jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Cossaboon*, 600 F.3d at 31 (quoting *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994)). Whether specific jurisdiction exists turns on an evaluation of the "'relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 215 (1st Cir.1984)). This evaluation involves a tripartite analysis: "First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must

13

analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction." *See United Elec. Workers,* 960 F.2d at 1088 (discussing this aspect of the inquiry and dubbing these factors the 'Gestalt factors')." *Phillips Exeter*, 196 F.3d at 288. "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." *Id.*

> **1.   This lawsuit does not "arise out of" or "directly relate to" any Maine-based contacts by MBAF**

The issue of whether a claim "directly arises out of or relates to" a defendant's contacts with the forum state is essentially one of proximate cause. *Salisbury Cove Assocs., Inc. v. Indcon Design (1995), Ltd.,* 211 F. Supp. 2d 184, 192 (D. Me. 2002). In order to meet their burden on the issue of "relatedness," Plaintiffs must establish that the action "*directly* arise[s] out of or relates to the defendant's contacts with the forum state." *Id.* (emphasis added).  Because Plaintiffs' defamation claim sounds in tort, the test is whether Plaintiffs have established "cause in fact (i.e. the injury would not have occurred 'but for' the defendant's forum state activity) and legal cause (i.e. the defendant's in-state conduct gave birth to the cause of action)."' *Scottsdale Capital Advisors Corp. v. The Deal, LLC,* 887 F.3d 17, 20-21 (1st Cir. 2018).

Here, the Complaint does not allege any conduct by MBAF within the State of Maine. The sole conduct of MBAF alleged in the Complaint is the posting of statements on MBAF's website. Plaintiffs only allege that these publications were published on MBAF's website. (Complaint, ¶ 47 (describing publication of the Press Release), ¶ 48 (describing publication of the Report)) None of these actions occurred in the State of Maine. (Kemmerly Decl., ¶ 2; Declaration of Rob Mann ("Mann Decl."), ¶ 2)

And, importantly, the Complaint does not allege that any resident of Maine read any of the purportedly defamatory Statements. As the First Circuit held in *Scottsdale Capital Advisors*,

14

887 F.3d 17, the "publication" element of defamation requires evidence that the defamatory material was communicated to a third party (a party who is not the subject of the defamation) where the third party understands the defamatory significance of the material. *Id.,* at 21. Further, the relatedness inquiry requires "at least some actionable defamation within the state." *Id.* Consequently, to establish relatedness, there must be a publication in the forum state, which requires a third party in the forum state to read the defamatory materials. In *Scottsdale*, the court found plaintiff failed to establish that any third party in the forum state had actually read the defamatory material; therefore no publication had occurred in the forum state and, consequently, plaintiffs failed to meet the relatedness test. *Id.* Here, beyond the point noted above that the activity of publishing information on a website is not activity that occurs in Maine, Plaintiffs do not allege that any third-party resident of Maine actually read the Report or Press Release on MBAF's website.

Consequently, Plaintiffs fail to meet their burden of showing their defamation claim arises out of or relates to any contact MBAF has with Maine. Because Plaintiffs fail to meet the relatedness test, there is no jurisdiction over MBAF.

## 2.    **There is No "Purposeful Availment"**

Plaintiffs must also meet the "purposeful availment" prong of the personal jurisdiction analysis, which examines whether the defendant's contacts with the forum "represent a purposeful availment by defendants of the privilege of conducting business in that State." *Sawtelle*, 70 F.3d 1at 1391. The focus on purposeful availment is to ensure that "personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). The "cornerstone" elements to the purposefulness test are "voluntariness and foreseeability." *Id.*

15

In this case, MBAF did not voluntarily avail itself of any benefits or privileges of conducting activities in Maine. MBAF is a California non-profit corporation. (Kemmerly Decl., ¶ 1) MBAF authored, edited, and published the Press Release and Report in California. (*Id.*, at ¶ 2) The Press Release and Report were uploaded to the Seafood Watch website in California. (Mann Decl., ¶ 2) The Seafood Watch website is passive; it does not allow for interactive comments or dialogue by those who access the website. (*Id.*, at ¶ 4) Moreover, MBAF has not circulated magazines or sent correspondence or otherwise engaged in any conduct to deliberately exploit a market in Maine. (Kemmerly Decl., ¶ 5) MBAF did not direct the release or any other communication to any resident of Maine. (*Id.*) Indeed, MBAF has not reached out to Maine in any way other than having a website and posting the Press Release and the Report on that website. (*Id.*)

The First Circuit has held the mere existence of a website that is visible in a forum is not enough to subject a defendant to personal jurisdiction in that forum. *Cossaboon*, 600 F.3d at 35, *McBee v. Delica Co*., 417 F.3d 107, 124 (1st Cir. 2005). **"The mere availability of a primarily informational website is not enough – by itself – to render a defendant susceptible to jurisdiction in a particular forum."** *Motus, LLC v. Cardata Consultants, Inc.*, 23 F.4th 115 (1st Cir. 2022) (emphasis added). Instead, to establish purposeful availment, a plaintiff must present "proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state.'" *Gentle Wind Project v. Garvey,* No. 04-103-P-C, 2005 U.S. Dist. LEXIS 261, at *23 (D. Me. Jan. 10, 2005) (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 262-263 (4th Cir. 2002))[25]; s*ee also*, *Broadvoice, Inc. v. TP Innovations, LLC*, 733 F. Supp. 2d 219, 226 (D.

---

[25] As in this case, the court observed in *Gentle Wind* that an argument basing personal jurisdiction on website publications "would allow any plaintiff to haul a web site publisher into court in the state in which the plaintiff operated merely because the web site included material that criticized the plaintiff, an expansion of the concept of personal jurisdiction so great as to render the 'purposeful availment' prong of the legal test a nullity." Id. at * 20-21.

Mass. 2010) (no purposeful availment to provide for jurisdiction in Massachusetts for defamation claim where defendant's defamatory website did nothing to incite residents of Massachusetts, as opposed to the world at large, against plaintiff); *Lin v. TipRanks, Ltd.,* No. 1:19-cv-11517-ADB, 2019 U.S. Dist. LEXIS 202376, at 1, 13 (D. Mass. Nov. 21, 2019) (publication of defamatory information about Massachusetts-based analyst on website available in Massachusetts did not satisfy purposeful-availment test, because the "website…is available to anyone with internet access and . . . is no more likely to solicit customers in Massachusetts than anywhere else" and location of plaintiff "[was] not apparent by simply visiting the site"); *Mullane v. Breaking Media, Inc.,* No. 18-12618-PBS, 2019 U.S. Dist. LEXIS 193270, at *28 (D. Mass. Aug. 13, 2019) (no purposeful availment when defendant, a blog "freely accessible to readers in Massachusetts" but "not aimed at legal consumers in Massachusetts specifically," published allegedly defamatory story about Massachusetts resident); *Farquharson v. Metz*, No. 13-10200-GAO, 2013 U.S. Dist. LEXIS 106374, at *6 (D. Mass. July 20, 2013) (no personal jurisdiction over Canadian defendant who made defamatory Facebook posts about Massachusetts-based plaintiff, because "she did not take any additional steps to specifically aim content at any Massachusetts residents").

Nothing alleged in the Complaint supports a finding that MBAF expressly targeted or directed its internet activity toward Maine. MBAF's website is free and open to anyone in the country (Mann Decl., ¶ 3) and its content in general is not focused on Maine.[26] There is no allegation that MBAF's website specifically solicited content from viewers in Maine. Under these facts, there is no purposeful availment. *See Gentle Wind Project,* 2005 U.S. Dist. LEXIS 261, at *26-27 .

---

[26] https://www.seafoodwatch.org/ (Mann Decl., ¶ 3)

3.     **The Gestalt "Reasonableness" Factors**

Plaintiffs' inability to satisfy the first two prongs of the jurisdictional analysis eliminates the need for the Court to reach the issue of reasonableness. *Sawtelle*, 70 F.3d at 1394 (the Gestalt factors "come into play only if the first two segments of the test for specific jurisdiction have been fulfilled."). However, Plaintiffs would not be able to establish the other "Gestalt" factors, which bear upon the fairness of subjecting nonresidents to the authority of a foreign tribunal: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Id.* (citing *Burger King Corp.,* 471 U.S. at 477 ). This "reasonableness" stage of the jurisdictional analysis evokes a sliding scale: "[T]he weaker the plaintiff's showings on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Sawtelle*, 70 F.3d at 1394.

In this case, three of the Gestalt factors weigh strongly against personal jurisdiction. First, MBAF's burden and expense of appearing in this Court would be great. MBAF is located in California and the individuals who published the statements and worked on the Press Release and Report are in California. (Kemmerly Decl., ¶ 2) Litigating and trying this case in Maine would require MBAF to coordinate the attendance of these witnesses. It would also be difficult to compel the attendance at trial or hearing of witnesses from other jurisdictions. Second, jurisdiction in Maine would not further Plaintiffs' interest in obtaining convenient and effective relief. Enforcement of any monetary judgment against MBAF would be easier for Plaintiffs on a judgment of a California court. To the extent Plaintiffs are rewarded a limited version of

injunctive relief (*see* Section VII's discussion of speech injunctions), a judgment from a court in California, where MBAF is domiciled, would better serve Plaintiffs' interests.

Third, for the same reasons, jurisdiction in Maine would not further the judicial system's interest in obtaining the most effective resolution of the controversy. Plaintiffs allege that MBAF knowingly published false and injurious statements. (Complaint, ¶ 94) The most effective and efficient way to handle this case would be to litigate the issues raised by Plaintiffs' Complaint in California, where the Press Release and Report were drafted and where the individuals responsible for their drafting and publication reside. As for the other factors, while Maine does have an interest in the dispute because Plaintiffs are residents of Maine and claim they have been damaged there, they do not outweigh the fact that the most efficient and effective jurisdiction for determining whether MBAF has any liability and for enforcement of any remedy obtained by Plaintiffs is California. The common interest in promoting substantive social policies does not weigh for or against jurisdiction in Maine.

Because three of the "Gestalt" factors weigh strongly against jurisdiction in Maine and those factors outweigh Maine's interest in the dispute, it would be unreasonable for this Court to assert personal jurisdiction over MBAF.  For this reason, and the reasons set forth above, Plaintiffs' Complaint against MBAF should be dismissed for lack of personal jurisdiction.

## IV.   VENUE SHOULD BE TRANSFERRED TO NORTHERN CALIFORNIA

If the Court does not dismiss this case, then it should be transferred to the N.D. Cal. Under 28 U.S.C. §1404(a), a court may transfer any action to another district in which the action might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." In addition to the convenience of parties and witnesses, the factors to be considered by the court include "the availability of documents; the possibility of consolidation; and the order in

which the district court obtained jurisdiction." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).

Here, the factors to be considered weigh heavily in favor of transferring this case to the N.D. Cal. The case could certainly have been filed in the N.D. Cal. in the first place, as MBAF is located there. Further, as this case concerns the actions of MBAF in creating and publishing the Press Release, Report, and Statements, the relevant witnesses and documents will be in Northern California. And, by the time this Motion is heard, there will likely be pending in the N.D. Cal. another action brought by Massachusetts lobstermen also claiming that they have been damaged by allegedly false statements in the Press Release and Report regarding lobster fishing practices in the Gulf of Maine and their impact on right whales. Consequently, although Plaintiffs' choice of venue is given a "strong presumption," here, the other factors weigh heavily in favor of transfer.

## A. The Likely Transfer of the Louisiana Action to the Northern District of California Weighs Heavily in Favor of Transfer of This Action

This is the second action filed against MBAF relating to the Press Release and Report. The first was filed in the Eastern District of Louisiana by four Massachusetts-based lobstermen who trap lobster in the Gulf of Maine on behalf of a class of "Massachusetts-based lobstermen who experienced a drop in income reasonably attributable to the actions of Monterey Bay Aquarium and Seafood Watch." (the "Louisiana Action").[27] As in this action, the plaintiffs in the Louisiana Action claim the Report is not "based upon reasonable or reliable scientific inquiry, facts or data" (Louisiana Complaint, ¶ 67), and they alleged claims under Louisiana's

---

[27] *Sawyer, et al. v. Monterey Bay Aquarium, et al*, United States District Court, Eastern District of Louisiana, Case No. 2:23-cv-00796; the complaint may be found at https://lobstermen.com/wp-content/uploads/2020/08/Filed-Class-Action-Complaint.pdf (Attached hereto as Exhibit 1)

Disparagement of Aquacultural Product Statute and for Intentional Interference with a Proprietary Right.

MBAF filed a motion in the Louisiana Action to transfer venue to the N.D. Cal. (or in the alternative, dismiss for lack of personal jurisdiction).[28] That motion has been fully briefed. By the time this Motion is fully briefed on August 24, 2023, the motion in the Louisiana Action will likely have been decided. Given that the Louisiana Action was filed by residents of Massachusetts against MBAF (a California non-profit corporation), it is likely the federal court in Louisiana will transfer the case to the N.D. Cal. If that happens and this case is not also transferred, there will be two cases in two different district courts involving the same basic issues regarding MBAF's creation and posting of the Press Release and Report. To avoid that inefficiency and the potential for contradictory verdicts, this Court should transfer this action to the N.D. Cal., where the two cases can be consolidated. "[R]elated litigation should be transferred to a forum where consolidation is feasible." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (date); *see also, Coady*, 223 F.3d at 11 (listing possibility of consolidation as a factor to consider on a motion to transfer). Because the plaintiffs in the Louisiana Action are not residents of Maine, there is no likelihood the Louisiana Action will be transferred to this forum. Efficiency and consistency demand the two actions be transferred and consolidated in the N.D. Cal.

**B.      The Convenience of Witnesses and Availability of Documents Weigh Heavily in Favor of Transfer to the Northern District of California**

Plaintiffs' defamation claim is based on the allegation "Defendants [sic] knowingly and intentionally published false and injurious statements disparaging Plaintiffs' products and business . . ." (Complaint, ¶ 94) Plaintiffs also allege "[t]he Aquarium was aware that its

---

[28] *Sawyer, et al. v. Monterey Bay Aquarium, et al*, United States District Court, Eastern District of Louisiana, Case No. 2:23-cv-00796 Monterey Bay Aquarium's Memorandum in Support of Motion to Transfer Due to Improper Venue or, In the Alternative, Lack of Personal Jurisdiction (Attached hereto as Exhibit 7)

statements set forth above were false or made these statements recklessly, negligently, or with disregard as to the falsity of the statements" and "[t]hese statements by the Aquarium set forth above were made with the intent of influencing those who would consume lobster, including customers and business partners upon whom Plaintiffs rely for commerce." (*Id.*, att ¶¶ 99-100) In particular, Plaintiffs allege "[t]he Aquarium's disregard for fact-driven analysis and its arbitrary treatment of data to suit its false narrative demonstrate the falsity of is assertions that 'scientific data' show that Maine lobster fishing practices threaten North Atlantic right whales with extinction." (*Id.*, at ¶ 75)

Consequently, the bulk of this case, at least as to liability, will concern the actions and intent of MBAF employees and others who created the Press Release and Report. The large majority of those individuals reside in California, particularly in the Northern District. Additionally, the documents relevant to those issues are primarily within MBAF's records, which, like MBAF itself, reside in California. Plaintiffs will presumably argue that evidence with respect to the damages suffered by them will be located in Maine. However, the damages Plaintiffs claim to suffer are the result of their customers reducing or eliminating orders of lobster. To determine the reasons for those decisions, discovery will be aimed not at Plaintiffs but at their customers. Plaintiffs do not claim their customers are located in Maine. To the contrary, Plaintiffs describe the geographic market for lobster as world-wide: "The lobsters are sold domestically and internationally, in both live and processed forms." (*Id.*, at ¶ 25)

As the witnesses and information pertinent to Plaintiffs' defamation claim are located in California, transfer to the N.D. Cal. is proper. *See, e.g., Bassili v. Chu*, 242 F. Supp. 2d 223, 232-233 (W.D.N.Y. 2002) (transferring defamation action from forum where plaintiff's warehouse is located to defendant's residence forum of California because "all of defendants' witnesses and

documents with information pertinent to the matters set forth on defendants' website are located in California . . ."); *Mateo v. Univ. Sys.*, No. 18-11953-FDS, 2019 U.S. Dist. LEXIS 6810, at *24-25 (D. Mass. Jan. 14, 2019) (transferring defamation action from Massachusetts to New Hampshire where the actions by the university defendant that form the basis of plaintiff's defamation claim took place).

Because transferring this action to the N.D. Cal. would allow it to be consolidated with the Louisiana Action, and because the events relevant to Plaintiffs' claim occurred primarily in Northern California and, as a result, the bulk of the witnesses and documents are located there, the Court should transfer this action to the N.D. Cal.

## V.   ANALYSIS UNDER EITHER MAINE'S ANTI-SLAPP STATUTE OR RULE 12(b)(6) COMPEL DISMISSAL OF THE COMPLAINT

### A.   Plaintiff's Complaint Should be Dismissed under Maine's anti-SLAPP Law

The Maine anti-SLAPP statute permits a defendant to file a special motion to dismiss a lawsuit "brought with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government by threatening would-be activists with litigation costs." *Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226. "SLAPP plaintiffs do not intend to win their suits; rather they are filed solely for delay and distraction, and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances." *Thurlow v. Nelson*, 2021 ME 58, ¶ 8, 263 A.3d 494, 498 (quoting *Morse Brothers, Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842). When presented with an anti-SLAPP motion, Maine law states a court "shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of [the] right of petition was devoid of any **reasonable factual support or any**

23

**arguable basis in law** and ... caused actual injury to the responding party." 14 M.R.S.A § 556

(emphasis added). In its review, the court is expected to "consider the pleading and supporting

and opposing affidavits stating the facts upon which the liability or defense is based." *Id*. A

defendant who prevails on a special motion to dismiss may recover litigation costs and attorney

fees from the plaintiff, at the discretion of the court. *Id*. The Maine anti-SLAPP law is considered

substantive in nature and is applicable in federal court. *Godin v. Schencks*, 629 F.3d 79 (1st Cir.

2010).

Ruling on an anti-SLAPP motion generally requires a two-step analysis. *Thurlow*, 2021

ME 58, ¶¶ 12-13, 19, 22, 263 A.3d 494, 499-503.  To prevail, the defendant carries the initial

burden to show that the suit was based on some activity that would qualify as an exercise of the

defendant's First Amendment right to petition the government. 14 M.R.S. § 556. This is a

question of law. *Id*. at ¶¶ 12, 22-24, 263 A.3d at 500, 503.  Once the defendant demonstrates

petitioning activity is the basis for the suit, and therefore that the statute applies, the burden falls

on the plaintiff to demonstrate the statements in issue were "devoid of factual and legal support"

and plaintiff has suffered "actual injury."  *Id.* at ¶¶ 25-31, 263 A.3d at 503-05.  The anti-SLAPP

statute defines "petitioning activity" as:

> any written or oral statement made before or submitted to a
> legislative, executive or judicial body, or any other governmental
> proceeding; any written or oral statement made in connection with
> an issue under consideration or review by a legislative, executive
> or judicial body, or any other governmental proceeding; any
> statement reasonably likely to encourage consideration or review
> of an issue by a legislative, executive or judicial body, or any other
> governmental proceeding; **any statement reasonably likely to
> enlist public participation in an effort to effect such
> consideration**; or any other statement falling within constitutional
> protection of the right to petition government.

14 M.R.S. § 556 (emphasis added). This definition of petitioning activity has "broad reach."

*Thurlow*, 2021 ME 58, ¶ 24, 263 A.3d 494, 503. *Schelling*, 2008 ME 59, ¶ 6, 942 A.2d 1226;

24

*Desjardins v. Reynolds*, 2017 ME 99, ¶ 18, 162 A.3d 228 ("The Legislature has chosen to protect petitioning activity by broadly defining a party's exercise of its right of petition.") (citation and internal quotation marks omitted). For example, "petitioning activity" for the purpose of the anti-SLAPP statute has been held to include a letter to the editor published in newspapers where the letter was "designed to expand the public consideration of a controversial issue recently considered by the Legislature." *Schelling,* 2008 ME 59, ¶ 13, 942 A.2d 1226. The anti-SLAPP statute also applies to a defendant's letters addressed to the City Council and Mayor and statements made to a newspaper where these communications were published in a newspaper. *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 3, 7, 847 A.2d 1169; *see also Gaudette v. Mainely Media*, *LLC* ("*Gaudette II"*), 2017 ME 87, ¶17, 160 A.3d 539 (protection of the anti-SLAPP statute applies to newspaper publishers or other parties when they are petitioning on their own behalf).

Here, MBAF's Statements constitute petitioning activity for the purpose of Maine's anti-SLAPP statute because they are "**reasonably likely to enlist public participation in an effort to effect such consideration.**" 14 M.R.S.A. § 556 (emphasis added). The red rating was assigned because of the risk lobster fishing gear poses to the right whale, which, MBAF consistently argues, is a result of inadequate regulations and poor management by the government agencies tasked with overseeing the fisheries. The Press Release confirms as much:

> After reviewing all available scientific data, **as well as existing legal requirements and regulations**, Seafood Watch determined that current Canadian and U.S. management measures do not go far enough to mitigate entanglement risks and promote recovery of the North Atlantic right whale**. As a result, Seafood Watch assigned a red rating to those fisheries using pots, traps, and gillnets.

(Complaint, Ex. 1 (emphasis added)).

25

MBAF engaged in activity made to enlist the public and influence the outcome of the controversy regarding regulation of the lobster fisheries. It is one of several activities by conservation and industry stakeholders other than MBAF meant to influence the issue. (*See supra* FN 6-9; *see infra* FN 33-34) In other words, MBAF's red rating is meant to effect regulations to promote safer conditions for right whales and improve government enforcement of those regulations—the essence of petitioning activity. *See, e.g., NAACP*, 458 U.S. at 909 (boycott of merchants was protected activity under Petition Clause). That MBAF's statements were made outside of the context of a legislative or judicial proceeding, and that the lobster industry may suffer financially because of MBAF's call to action, are irrelevant to the analysis.

In *Shire City Herbals, Inc. v. Blue*, No. 15-30069-MGM, 2016 U.S. Dist. LEXIS 62888, *14 (D. Mass. May 12, 2016), defendants argued their social media campaign meant to effect the cancelation of plaintiff's trademark amounted to petitioning activities within the ambit of the Massachusetts anti-SLAPP statute. The court agreed, noting that defendants' activity fell within the realm of '"reasonably likely to enlist public participation in an effort to effect such consideration."' *Id.,* at *14-15. The court deemed irrelevant the fact that defendants' form of petitioning fell outside a formal governmental proceeding, noting '"[p]etitioning includes all statements made to influence, inform, or at the very least, reach governmental bodies—either directly or indirectly."' *Id*., at *15; *see also Schelling*, 2008 ME 59, ¶ 14, 942 A.2d 1226 (the "definition of the right to petition the government provided by the statute is unquestionably broad enough to encompass activities related to matters not currently pending before a legislative body"). Also irrelevant to the court's petitioning analysis was defendants' commercial motivations. "Publishing statements and organizing a boycott are quintessential petitioning activities. The commercial effects of Defendants' opposition to [Plaintiff's product] do not

change the nature of their activities, nor does the fact that the boycott had the intended effect of decreasing retailers willingness to stock Plaintiff's product." *Shire City Herbals,* 2016 U.S. Dist. LEXIS 62888*, at \*20; see also Riverdale Mills Corp. v. Cavatorta North Am., Inc.,* 189 F. Supp. 3d 317, 324 (D. Mass. 2016) (typical categories of petitioning activities include "engaging in peaceful boycotts and demonstrations").

Because MBAF has demonstrated the Statements constitute petitioning activity for the purpose of Maine anti-SLAPP statute, the burden shifts to Plaintiffs to show that the exercise of the right of petition was "devoid of any reasonable factual support or any arguable basis in law." 14 M.R.S. § 556 (first paragraph).  Plaintiffs, however, cannot meet their burden since none of the Statements constitute actionable defamation, as discussed below in Section VI.

      **B.**      **<u>Plaintiff's Defamation Claim Should be Dismissed under Rule 12(b)(6)</u>**

Even if this Court does not invoke the Maine anti-SLAPP statute, Plaintiffs' failure to plead a cognizable defamation claim mandates dismissal under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*., at 555 (citations omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). When determining whether a complaint satisfies this standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).

In a proceeding on motion to dismiss, a court limits its review to the facts found within the four corners of the complaint, any facts found in documents attached to the complaint (here, the Press Release and Report) or essential to the complaint's allegations (here, the sources cited by the Press Release and Report), and other materials if they are susceptible to judicial notice. *Zenon v. Guzman*, 924 F.3d 611, 615-616 (1st Cir. 2019); (*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Dismissal is appropriate based on a legal defense to the claims, such as a First Amendment defense, if a review of the complaint, the attached materials, and judicially noticed other materials makes it clear beyond doubt that the asserted claims succumb to the defense. *Zenon*, 924 F.3d at 616.

## VI.    THE STATEMENTS DO NOT CONSTITUTE ACTIONABLE DEFAMATION

Plaintiffs have not sufficiently alleged a claim for defamation. The elements of a defamation cause of action under Maine law are: (1) a false and defamatory statement pertaining to the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence; and (4) per se damages or special harm. *Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447; *Garrett v. Tandy Corp.*, 295 F.3d 94, 103 (1st Cir. 2002). A statement is defamatory only if: (a) "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Schoff v. York Cnty.*, 2000 ME 205, n.3, 761 A.2d 869; and (b) it is "an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts." *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991). Whether a statement is capable of conveying a defamatory message is a question of law. *Morgan*, 2008 ME 26, ¶ 26, 941 A.2d 447.

Here, the Statements do not pertain to Plaintiffs, rather they are about the lobster industry and governmental regulation thereof. Moreover, the Statements are non-actionable opinion. Finally, Plaintiffs cannot demonstrate that MBAF acted with actual malice or negligence when publishing the Statements. For the Court's ease, below find again the Statements:

| No. | Alleged Defamatory Statement |
| --- | --- |
| 1. | "At this time, each fishery using this gear is putting this protected species [i.e., the right whale] at risk of extinction." |
| 2. | "No one wants to know their appetite for seafood is driving a species to extinction." |
| 3. | "The seafood [rated Avoid] is caught or farmed in ways that harm other marine life or the environment. There's a critical conservation concern or many issues need substantial improvement." |
| 4. | "[M]anagement measures and the Atlantic Large Whale Take Reduction Plan have not been successful at reducing serious injury and mortality to the North Atlantic right whale[.]" |
| 5. | "Based on the available information and the significant risks to NARW, the American lobster fishery cannot be considered sustainable." |
| 6. | "The updated assessments highlight significant risks of entanglement in pot, trap, and gillnet fisheries to the endangered North Atlantic right whale and the lack of timely, effective management necessary to mitigate entanglement risks and promote recovery of the species." |
| 7. | That Seafood Watch reviewed "all available scientific data" and followed a "rigorous, transparent, science-based process to evaluate" the Maine lobster fishery. |
| 8. | "According to Seafood Watch standards, when fisheries pose a high risk of harm to marine life or the environment and appropriate management measures are not in place, they are assigned a red rating." |
| 9. | That consumers should "avoid" and "take a pass" on purchasing lobster and lobster products caught in the Gulf of Maine/Georges Bank region on the basis of these false statements. |

(Complaint, ¶ 94)

29

A.        **The Statements Are Not "Of And Concerning" Plaintiffs**

Plaintiffs' claim for defamation fails because they cannot prove the alleged defamatory publications refer to them. This element of a libel lawsuit often is referred to as the "of and concerning" principle, and there can be no liability if the statement at issue is not proven to be "of and concerning" the plaintiff. In *Rosenblatt v. Baer*, 383 U.S. 75, 81, (1966), the Court held that the jury could not find liability by inference and without the constitutionally required "evidence that the asserted implication" of the published statement "was made specifically of and concerning" the plaintiff. *Id.* at 82. Maine law imposes the same "of and concerning" standard before a plaintiff can state a defamation claim. *Lester*, 596 A.2d at 69. Here, the Statements neither mention Plaintiffs by name nor imply their identities.

Moreover, MBAF's Statements refer to regional "Gulf of Maine/Georges Bank" lobster fisheries in general and government oversight of those fisheries. Plaintiffs estimate the Maine fishery employs more than 5,600 lobstermen. (Complaint, ¶ 25) Maine has long held that "defamation of a class or group does not form the basis of a cause of action on the part of an individual member of the group." *Robinson v. Guy Gannett Publishing Co.*, 297 F. Supp. 722, 726 (D. Me. 1969). "'Defamation of a large group gives rise to no civil action on the part of an individual member of the group unless he [or she] can show special application of the defamatory matter to him[self or her]self.'" *Sullivan v. Chester Water Auth.*, No. 2:22-cv-00147-JDL, 2022 U.S. Dist. LEXIS 130080, at *32-33 (D. Me. July 22, 2022). Plaintiffs do not, and cannot, allege any special application of the Statements to them, and therefore, they have failed to allege an actionable claim for defamation.

### B.        The Statements Are Protected Opinion

The Statements are MBAF's *opinions* based on data gathered by, and conclusions from, scientists who are experts in the fields of ocean conservation and the right whale. In order to be actionable, a statement must be provable as false. *Levesque v. Doocy*, 560 F.3d 82, 88 (1st Cir. 2009). "[A] statement cannot be defamatory if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015) (internal quotation marks omitted). "[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Pan Am Sys. v. Hardenbergh*, 871 F. Supp. 2d 6, 15 (D. Me. 2012) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)).

The Court must "'look to the totality of the circumstances and to whether the statement was intended to state an objective fact or a personal observation.'" *Pan Am Sys.*, 871 F. Supp. 2d at 19. Tentative scientific conclusions that are expressly disclosed as such are deemed non-verifiable facts and are therefore nonactionable. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496 (2d Cir. 2013) ("it is the essence of the scientific method that the conclusions of empirical research are tentative and subject to revision, because they represent inferences about the nature of reality based on the results of experimentation and observation"); *Pacira Biosciences, Inc., v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240 (3rd Cir. 2023) ("'a scientific conclusion based on non-fraudulent data in an academic publication is not a 'fact' that can be proven false through litigation'"); *Saad v. Am. Diabetes Ass'n*, 123 F. Supp. 3d 175, 179 (D. Mass 2015) ("[T]he reliability of the data in [scientific] articles is not fit for resolution in the form of a defamation lawsuit.").

31

Here, MBAF's Statements are based on, and restate, tentative scientific conclusions in the context of a heated scientific and public debate, and they were expressly disclosed as such. Plaintiffs' primary contention is MBAF falsely accuses them of fishing practices harmful to the right whale. (Complaint, ¶ 9) The Report, however, does not assert there exists conclusive evidence that right whales were killed or injured by entanglements with gear in Maine fisheries. Rather, the Report presents facts, findings, and theories—from numerous reports by ocean scientists who are recognized as experts in their field—to support MBAF's *thesis* that lobster fishing gear in Canadian and U.S. fisheries, including Maine, pose a threat to the nearly extinct right whale: "**Until there is more specific information available regarding which fisheries are responsible for unattributed entanglements, Seafood Watch considers that all relevant fisheries that may overlap with NARW pose risks.**" (*Id.*, Ex. 2 p. 50). MBAF makes such concessions throughout the Press Release and Report, expressly acknowledging when it lacks certain evidence to support its opinion that lobster fisheries endanger right whales:

- The Press Release stated that "[m]ore than 90% of entanglements cannot be linked to a specific gear type, and only 12% of entanglements can be linked to a specific location." (*Id.*, Ex. 1)

- The Press Release stated, "Until there is more evidence, all of the fisheries using this gear are considered a risk." (*Id.*)

- The Report states, "Due to a lack of information, it is often not possible to assign entanglements to a specific fishery." (Complaint, Ex. 2 p. 39)

- The Report states "Documented entanglements from 2015-2019 involving pot/trap gear or unidentified gear are all attributed to unknown fisheries, of which the lobster fishery may be a part." (*Id.*)

- The Report states it considers that "all relevant fisheries that may overlap with [the right whale] pose risks." (*Id.,* p. 50)

- The Report acknowledges that entanglement in fishing gear is only one of several factors contributing to the decline in the right whale population. (*Id.,* p. 39)

32

- The Report admits there has been a northward distributional shift in recent years with the right whales' presence in the Gulf of Maine.  (*Id.*, p. 40)

(Complaint, ¶¶ 67-71) Plaintiffs' own characterization of the above statements as "conjecture" underscores the very reason their defamation claims must be dismissed as non-verifiable opinion. (Complaint, ¶ 68) Finally, the statement that "No one wants to know their appetite for seafood is driving a species to extinction," in addition to being opinion based on tentative scientific data, is a classic example of the sort of "rhetorical hyperbole" and "imaginative expression" that is protected by the First Amendment. *See Riley v. Harr*, 292 F.3d 282, 297 (1st Cir. 2002).

## C.   As Public Figures & Limited Public Figures, Plaintiffs Cannot Overcome their Burden of Demonstrating Actual Malice

Even if this Court concludes the Statements were "of and concerning" the Plaintiffs, and even if this Court finds the Statements ventured further than opinion and implied false and defamatory facts, Plaintiffs' defamation claim must be dismissed because they cannot overcome their burden of proof on the element of "fault." A claimant who is a public official or public figure must show the defendant acted with "actual malice," that is, with knowledge that the statements were false or reckless disregard to their truth or falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964) (public officials); *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 154-155 (1967) (public figures).

### 1.   Plaintiffs are public or limited-public figures

Individuals are deemed public figures either if they assume "roles of special prominence in the affairs of society . . . [that] invite attention and comment," (so-called "all-purpose public figures") or if they "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved" (so-called "limited purpose public figures"). *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 349-350 (1974); *Pendleton v. City of Haverhill*, 156 F.3d 57, 66-67 (1st Cir. 1998). The critical questions for limited-purpose public figure status

33

are whether a matter of "public controversy" existed prior to the alleged defamation, and whether the defamed individual deliberately "thrust himself into the vortex" of that controversy or otherwise "engage[d] the public's attention in an attempt to influence its outcome." *McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) (citing *Gertz*, 418 U.S. at 351-352). While ascertaining public-figure status may in some cases require a "detailed fact-sensitive determination," the matter is resolved as a question of law when possible, and it is "'perfectly reasonable to . . . decide whether a plaintiff is a . . . public figure during pretrial proceedings.'" *Id.*

Here, Maine Lobstermen's Association and Maine Coast Fisherman's Association qualify as public figures because their purpose and practice is to advocate on behalf of their members and industry. (Complaint, ¶¶ 15-16); *National Nutritional Foods Ass'n v. Whelan*, 492 F. Supp. 374, 376 (S.D.N.Y. 1980) (trade associations are public figures); *see Bowman v. Heller*, 420 Mass. 517, 529-530 (1995) (union of officials are deemed public figures). In its own words, the Maine Lobstermen's Association "is the oldest and largest fishing industry association on the east coast", "advocates for a sustainable lobster resource and the fishermen and communities that depend on it" and "is engaged on issues that affect the future of the lobster fishery."[29] Maine Coast Fisherman's Association, in its own words, "works with policymakers at the local, state, regional, and federal levels, including those at the Maine Department of Marine Resources, New England Fisheries Management Council, Atlantic States Marine Fisheries Commission, and elected state and federal representatives."[30] Their status as public figures predates publication of the Statements before this Court; that these organizations were well known in their communities

---

[29] https://www.mainelobstermen.org/policy-advocacy-and-education (Attached hereto as Ex. 8)
[30] https://www.mainecoastfishermen.org/fisheries-policy (Attached hereto as Ex. 9)

34

is supported by media attention they sought and received about issues unrelated to this litigation.[31] *See Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 18-20 (1st Cir. 2011)

At the very least, Maine Lobstermen's Association and Maine Coast Fishermen's Association are limited public figures for the purpose of the controversy over regulating lobster fisheries in favor of conservation, a public issue that existed well before the alleged defamation and about which both organizations have been outspoken advocates for the lobstermen. *See Norris v. Bangor Publ'g. Co*., 53 F. Supp. 2d 495, 505 (D. Me. 1999) (the head of a national opposition research firm who has both drawn and embraced media attention in the past deemed limited public figure); *Quantum Elecs. Corp. v. Consumers Union*, 881 F. Supp. 753, 764 (1st Cir. 1995); *Gray v. St. Martin's Press, Inc*., 221 F.3d 243, 251 (1st Cir. 2000). Maine Lobstermen's Association intervened in the high-stakes litigation between conservationists and the federal government well before MBAF issued its red rating. *See Ctr. for Biological Diversity v. Raimondo,* 610 F. Supp. 3d 252, 263 (D.D.C. 2022); *Ctr. for Biological Diversity v. Ross,* 310 F. Supp. 3d 119 (D.D.C. 2018)*; see also Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv., No. 21-2509 (JEB),* 2022 U.S. Dist. LEXIS 169246 (D.C.C. Sept. 8, 2022). Maine Lobstermen's Association also has advocated its position in the press prior to the red rating.[32] Likewise, the Maine Coast Fisherman's Association made a public statement on the controversy when it issued a press release praising the Maine Lobstermen's Association legal activity against tighter regulations.[33]

---

[31] https://www.mainecoastfishermen.org/post/maine-coast-fishermen-s-association-program-surpasses-200-000-donated-seafood-meals (Attached hereto as Ex. 10); https://www.mainelobstermen.org/history (Attached hereto as Ex. 11)

[32] *See, e.g.,* https://www.pressherald.com/2022/01/09/maine-voices-maine-lobstermen-are-committed-to-protecting-our-ocean/; (Attached hereto as Ex. 12)

[33] https://www.mainecoastfishermen.org/post/lobstermen-v-national-marine-fisheries-service (Attached hereto as Ex. 13)

35

Their concerted efforts to influence the debate by "deliberately [coming] forward" by speaking with reporters, "thereby engaging the public's attention and invit[ing] public scrutiny" of the credibility of their position, make them limited public figures. *See McKee v. Cosby*, 874 F.3d at 62 (plaintiff deemed a limited public figure because she "took concerted steps meant to influence the public's perception of whether [defendant] was, in fact, a sexual predator").Accordingly, Plaintiffs are pubic or limited public figures and must therefore overcome the actual malice burden to prevail on their defamation claim. The remaining three Plaintiffs Bean Maine Lobster, Atwood Lobster, and Bug Catcher are likely not public figures and therefore their claim is subject to the negligence standard, a burden they cannot overcome.

### 2.     **The record does not support actual malice or negligence**

Plaintiffs may recover for injury to their reputation "only on clear and convincing proof" the Statements were made with actual malice. *Gertz*, 418 U.S. at 342. The Supreme Court in *St. Amant v. Thompson*, 390 U.S. 727 (1968), the leading case on actual malice, discussed the examples of evidence that would support the requisite showing, breaking them down into three general categories: evidence that the story was (1) "fabricated"; (2) "so inherently improbable that only a reckless man would have put [it] in circulation"; or (3) "based wholly on an unverified anonymous telephone call" or some other source that the defendant had "obvious reasons to doubt." *Id.,* at 732. "[W]hether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989).

The burden of actual malice is onerous and rarely overcome, especially when defendants rely on sources for their reporting . *See, e.g., St. Amant*, 390 U.S. at 733 (reliance on single source with clear bias did not permit inference of actual malice where defendant "had verified

other aspects" of source's information); *Levesque*, 560 F.3d at 90-93 (no actual malice when no facts indicated defendants purposefully avoided the truth, even defendants' vetting process of source allegation was "perhaps too cursory and perfunctory"); *Schatz.,* 669 F.3d at 58 (no actual malice where defendant's alleged defamatory statements "synced up with or at least was not out of line with what the stories [two articles on which defendant relied and cited in an alleged defamatory flyer] said"); *Tavoulareas v. Piro,* 817 F.2d 762, 790-91 (D.C. Cir. 1987) (concluding that a reporter's reliance on a particular source did not constitute actual malice, where much of the source's information was independently verified by other sources and the reporter knew the source had also given the same statement to congressional investigators and had repeatedly demonstrated his consistency as a source). Even the negligence standard on a defamation claim—where the standard of conduct is that of a reasonable person under like circumstances—is difficult to overcome when a defendant relied on a source. *See Penobscot Indian Nation v. Key Bank*, 906 F. Supp. 13, 22-23 (D. Me. 1995) (plaintiff could not demonstrate negligence where a defendant read at a press conference the substance of a legal complaint whose veracity he had no reason to doubt).

Here, Plaintiffs cannot demonstrate MBAF disbelieved or harbored serious subjective doubts as to the validity of sources on which MBAF based the Statements. Nor can they demonstrate MBAF was negligent in relying on the sources, i.e. that a reasonable person would not have relied on them. MBAF's Statements were based on source materials that included data and conclusions from scientists who are experts in ocean conservation and right whales in particular. For example, MBAF relied on and cited in the Press Release and Report a September 17, 2019 letter to Senator Collins and other Maine elected officials from 18 scientists "with

37

expertise on the North Atlantic right whale … and its conservation."[34] The detailed letter argues that, contrary to the narrative told by the Maine lobster industry, right whales are common in Maine waters, that the numbers of entanglement in Maine waters are "significantly underestimate[d]", and to "claim this is not a Maine problem because of a 'disturbing lack of evidence' is misleading at best."[35] MBAF also relied on and cited a federal judge who ruled the NOAA's measures to reduce impacts on right whales from U.S. fisheries, including the Maine fishery, were insufficient, and ordering the agency to amend the Atlantic Large Whale Take Reduction Plan to further reduce the risk of mortalities and serious injuries of right whales and other large whales caused by entanglement along the U.S. East Coast. *Ctr. for Biological Diversity v. Raimondo*, 610 F. Supp. 3d 252 (D.D.C. 2022).

Because MBAF based the Statements on, and accurately represented the contents of reliable source materials, the publications did not involve actual malice or negligence. Accordingly, Plaintiffs cannot succeed on their defamation claim and it must be dismissed.

## VII. PLAINTIFFS SEEK AN UNCONSTITUTIONAL INJUNCTION

"[P]rior restraints [on speech] are regarded as the most serious and the least tolerable infringement on First Amendment rights." *Sindi v. El-Moslimany*, 896 F.3d 1, 32 (1st Cir. 2018) (citation and quotation marks omitted). Plaintiffs' request for an order "requiring Defendant to remove from its websites and other published material all defamatory statements concerning the Maine lobster industry and its fishing practices" (Complaint, prayer at b) in no conceivable way could withstand "the most exacting scrutiny demanded by our First Amendment jurisprudence." *Sindi*, 896 F.3d at 32. Even if Plaintiffs' claim is fully adjudicated in their favor, their sought-

---

[34] https://www.nrdc.org/sites/default/files/media-uploads/scientist_letter_on_right_whales_and_lobster_gear_risk_in_maine.pdf (cited by Report as Kraus et al. 2019) (Kemmerly Decl., Ex. C)
[35] *Id.*

after injunction cannot pass constitutional muster because it would be impermissibly broad and punish future conduct that may, because of endless possible contextual variations, be constitutionally protected. *Id.* at 32-35. This Court must refuse Plaintiffs' request.

## VIII.   **CONCLUSION**

This Court lacks personal jurisdiction over MBAF. There are no sufficient facts to establish contacts by MBAF with the State of Maine adequate to subject it to personal jurisdiction. If this Court rules it has jurisdiction over MBAF, it should nevertheless transfer venue to the Northern District of California, where the Plaintiffs' claim should be consolidated with those of their allies from Massachusetts. If the Court retains the action, it should either dismiss the Complaint under Maine's anti-SLAPP statute and award attorney fees, or, in the alternative, dismiss the action for failure to state a claim pursuant to Rule 12(b)(6). Finally, if this Court does not dismiss Plaintiffs' Complaint, it should not grant Plaintiffs' requested injunction as it would constitute an unconstitutional prior restraint on speech.

WHEREFORE, Defendant Monterey Bay Aquarium Foundation respectfully requests this Court to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction, or, in the alternative, transfer venue to the Northern District of California. If this Court retains the action, Defendant requests this Court to dismiss Plaintiffs' Complaint.

Dated at Portland, Maine this 22nd day of May, 2023.

NORMAN, HANSON & DeTROY, LLC

*/s/ Russell B. Pierce, Jr.*
_____
Russell B. Pierce, Jr., Esq.



Attorney for Defendant
Monterey Bar Aquarium Foundation
Norman, Hanson & DeTroy, LLC
Two Canal Plaza
P.O. Box 4600
Portland, ME 04112
Phone: 207-774-7000
rpierce@nhdlaw.com

BERGESON, LLP

*/s/ Rebecca Nell Kaufman*
_____
Daniel J. Bergeson, Esq. (pro hac vice pending)
John Pernick (pro hac vice pending)
Rebecca N. Kaufman, Esq. (pro hac vice pending)

Attorneys for Defendant
Monterey Bay Aquarium Foundation
Bergeson, LLP
111 N Market St #600
San Jose, CA 95113
Phone: 408-291-6200
rkaufman@be-law.com

40

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2023, I electronically filed the above Defendant Monterey Bay Aquarium Foundation's Motion to Dismiss with the Clerk of Court using the Court's CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Russell B. Pierce, Jr.*

Russell B. Pierce, Jr., Esq.

Attorneys for Defendant
Monterey Bay Aquarium Foundation
Norman, Hanson & DeTroy, LLC
Two Canal Plaza
P.O. Box 4600
Portland, ME 04112
Phone: 207-774-7000
rpierce@nhdlaw.com

41