UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BEAN MAINE LOBSTER, INC., MAINE
LOBSTERMEN'S ASSOCIATION, INC., MAINE
COAST FISHERMEN'S ASSOCIATION, INC., MAINE
LOBSTER AND PROCESSING, LLC d/b/a ATWOOD
LOBSTER, LLC., and BUG CATCHER, INC.,

                    Plaintiffs,

- v. -

MONTEREY BAY AQUARIUM FOUNDATION,

                    Defendant.

Civ. Action No. 2:23-CV-00129-JAW

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION
FOR LIMITED JURISDICTIONAL DISCOVERY**

Plaintiffs respectfully submit this reply in further support of their Motion for Limited Jurisdictional Discovery (the "Motion").[1]

The Aquarium is trying to have its cake and eat it too. In seeking to avoid defending Plaintiffs' defamation claims in this forum, the Aquarium has made several factual statements about its relevant contact with Maine and its residents. Many of these statements concern matters that would not be known to Plaintiffs. The Aquarium wants the Court to credit these assertions for purposes of its personal jurisdiction arguments, while denying Plaintiffs the opportunity to test in discovery whether the Aquarium's assertions are accurate and complete. The Aquarium cannot have it both ways.

---

[1] For ease of reference, this Reply employs the defined terms in the Motion. In addition, "Aquarium's Opposition" and "Def. Opp." refer to Defendant Monterey Bay Aquarium Foundation's Opposition to Plaintiffs' Motion for Limited Jurisdictional Discovery, filed August 24, 2023 [ECF no. 39]; and "Def. MTD Reply" refers to Defendant Monterey Bay Aquarium's Reply in Further Support of Its Motion to Dismiss, filed August 24, 2023 [ECF no. 38].

Even without the opportunity to take discovery on the Aquarium's self-serving statements, Plaintiffs' position is that the facts in the record on the Aquarium's Motion to Dismiss are more than sufficient to establish personal jurisdiction under governing law. *See* Pltfs. MTD Opp. at 8-12; *see also Calder v. Jones* 465 U.S. 783 (1984). The Aquarium solicited comments from numerous Maine sources in preparing the Statements at issue; it received comments from Maine sources that demonstrated the Statements were false, and ignored them; then, after publishing those Statements, the Aquarium purposefully communicated about those Statements with media outlets that cover Maine. *See* Pltfs. MTD Opp. at 9-11; Def. MTD Reply at 6. Nevertheless, if the Court believes that the Aquarium's statements about its contacts with Maine are germane to the outcome of the personal jurisdiction analysis, precedent and fairness require that Plaintiffs have the chance to test those assertions with discovery and supplement the factual record before the Court decides the personal jurisdiction issue.

## ARGUMENT

### THE REQUESTED DISCOVERY TESTS THE COMPLETENESS AND VERACITY OF THE AQUARIUM'S ASSERTIONS ABOUT ITS OWN JURISDICTIONALLY-RELEVANT CONTACTS WITH MAINE.

The Aquarium's argument that the requested jurisdictional discovery would be irrelevant or redundant is demonstrably untrue. *See* Def. Opp. at 1. As shown below, Plaintiffs' requested jurisdictional discovery is targeted directly at the subject matter of the Aquarium's representations to this Court about its contacts with Maine concerning the facts underlying Plaintiffs' defamation claims.

As an initial matter, the Aquarium concedes that it had some contact with Maine relating to Plaintiffs' defamation claims. The Aquarium admits that it sought comments on the report containing the defamatory Statements from Plaintiff MLA "and other Maine-based lobster industry

2

participants." Def. MTD Reply at 6.  The Aquarium also admits that its officer spoke directly with a Maine-based publication concerning the defamatory Statements, and does not deny that it spoke about the Statements with other regional news media outlets that publish and broadcast in Maine. *See id.*  In addition, the Aquarium admits that it issued press releases in Maine to ensure its defamatory Statements were more widely broadcasted, and that it used Maine sources for its article.  *See* Pltfs. MTD Opp. at 11.  The Aquarium does not deny that it sought and obtained a license to raise charitable funds in Maine, or that its "Seafood Watch" website is published to readers in Maine and prominently features a clickable "Donate Now" button that solicits donations from Maine residents.  *Id.* at 12.  Together, these contacts are sufficient to confer personal jurisdiction under *Calder v. Jones* and First Circuit precedent.  *See id.* at 8-10.[2]

In an attempt to minimize the significance of these contacts, the Aquarium has made several conclusory representations to the Court concerning its conduct: (a) The Aquarium claims that it has not sent correspondence to anyone in Maine concerning the Statements "or otherwise engaged in any conduct deliberately to exploit a market in Maine"; (b) the Aquarium denies that it has directed the Report, the Press Release, or any related communications to Maine residents; and (c) the Aquarium denies that it has "reached out to Maine in any way other than having a website and posting the Press Release and the Report on that website."  *See* Def. MTD at 16.  None of these representations is corroborated by documentary evidence.

Plaintiffs' proposed topics for jurisdictional discovery go to the heart of the Aquarium's conclusory representations and explore further the contacts that the Aquarium acknowledges it has

---

[2] The Aquarium has withdrawn one of its personal jurisdiction arguments.  The Aquarium had argued that Plaintiffs failed to show relatedness because there was supposedly no evidence that "any third party in the forum state had actually read the defamatory material." *See* Def. MTD Mem. at 15.  After Plaintiffs refuted this argument, *see* Pltfs. MTD Opp. at 12–13, the Aquarium now concedes relatedness.  *See* Def. Opp. at 4.

3

had with Maine.  *See* Motion Ex. A.

First, Plaintiffs would test in discovery whether the Aquarium has in fact "engaged in conduct deliberately to exploit a market in Maine" through fund-raising efforts—particularly efforts that reference the Statements.  Indeed, it is already established that the Aquarium, a non-profit that raises money through donations, has obtained a license to raise such funds in Maine.  *See* Pltfs. MTD Opp., Ex. 1.  Proposed Topics 1 and 2(b) explore these areas.  *See* Motion Ex. A.

Similarly, Plaintiffs would seek in discovery to learn the full extent that the Aquarium has communicated with persons in Maine concerning the Statements, before and after they were published.  The record already shows that the Aquarium had substantial contacts with Plaintiff MLA about such statements and ignored MLA's demonstration that there was no science to support the Aquarium's planned Statements.  *See* Pltfs. MTD Opp. at 22, 34; Complaint [ECF no. 1] ¶¶ 8–10, 67–69.  The Aquarium admits that it had similar communications with "other Maine-based lobster industry participants."  *See* Def. MTD Reply at 6.  The record also shows that the Aquarium communicated with Maine's two U.S. Senators, its Governor, and several of its U.S. Congressional Representatives about the Statements, both pre- and post-publication.  *See* Declaration of Jennifer Dianto Kemmerly, Exhibit A [ECF no. 20]; *id.*, Exhibit C [ECF no. 20-2].  All communications between the Aquarium and persons in Maine concerning the Statements are relevant to the specific jurisdiction analysis.  Such communications are the subject of proposed Topics 2(a) and (c).  *See* Motion Ex. A.

In addition, Plaintiffs would take discovery to learn the full extent that the Aquarium engaged in purposeful communications with news organizations that publish or broadcast in Maine for the purpose of disseminating the Statements in Maine.  The Aquarium admits that its officer spoke directly with one Maine-based publication concerning the defamatory Statements, but avers

(without corroboration) that the Aquarium did not initiate this communication.  The Aquarium does not deny that it spoke about the Statements with other regional news media outlets that publish and broadcast in Maine.  These communications with media that cover Maine are the subject of proposed Topic 2(d).  *See* Motion Ex. A.

Without explaining how, the Aquarium speculates that Plaintiffs have already conducted "an exhaustive search" to identify the Aquarium's communications with Maine media outlets.  Def. Opp. at 5.  This baseless conjecture defies common sense and should be disregarded.  Plaintiffs were not parties to the Aquarium's communications with the media, and would have no reliable way to learn the extent of these communications without discovery.

Finally, the Aquarium suggests that the "brunt of the injury" element of the *Calder* test is irrelevant because its Statements affected a group not an individual.  *See* Def. Opp. at 6.  This is not correct.  *Calder* examines whether the Aquarium knew its Statements would injure persons in Maine who catch and sell lobsters in the Gulf of Maine and Georges Bank.  The record on the Motion to Dismiss shows that an Aquarium officer acknowledged in an email to Plaintiff MLA that the Aquarium was aware of the "possible results of [its] assessment and the impact it may have[.]"  Pltfs. MTD Opp. at 11.  If the Court nevertheless questions whether the Aquarium knew the "brunt of the injury" of its Statements would be felt in Maine, Plaintiffs seek leave to conduct jurisdictional discovery into this issue.  Contrary to the Aquarium's suggestions, Plaintiffs have identified this as a topic for discovery in the Motion.  *See* Moving Br. at 5 ("Discovery would also examine the extent to which the Aquarium was aware of the harm that the Statements would cause to Maine lobster businesses like Plaintiffs."), 6 (Requesting jurisdictional discovery to examine "the extent to which the Aquarium directed its statements at Maine, knew the impacts of its defamation would be felt there, and reached into the state to solicit feedback on its publications.").

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Motion, if the Court determines that the Plaintiffs have not made a prima facie case that the Aquarium is subject to personal jurisdiction in Maine in this action, the Court should grant this Motion and permit Plaintiffs to conduct limited jurisdictional discovery as set forth in Exhibit A to Plaintiffs' Motion.

Dated:  September 6, 2023

  /s/ Clifford Ruprecht
Clifford Ruprecht
ROACH RUPRECHT
SANCHEZ & BISCHOFF P.C.
527 Ocean Avenue, Suite 2
Portland, ME  04103
(202) 747-4870
cruprecht@rrsblaw.com

*Attorneys for Plaintiffs Bean Maine Lobster, Inc., Maine Lobstermen's Association, Inc., Maine Coast Fishermen's Association, Inc., Maine Lobster and Processing, LLC d/b/a/ Atwood Lobster, LLC, and Bug Catcher, Inc.*

OF COUNSEL:

VENABLE LLP
Edward P. Boyle (admitted *pro hac vice*)
Jeremy C. Sykes (admitted *pro hac vice*)
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 808-5675
epboyle@venable.com
jcsykes@venable.com

Kevin J. Lipson
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4415
kjlipson@venable.com