UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BEAN MAINE LOBSTER, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MONTEREY BAY AQUARIUM FOUNDATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 2:23-cv-00129-JAW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER ON MOTIONS TO SUPPLEMENT RECORD AND REQUESTS FOR JUDICIAL NOTICE**

In light of new information, the parties in a defamation lawsuit each move to supplement the record and for the court to take judicial notice of government records in its review of a pending motion to dismiss. The court grants both parties' respective motions to supplement and requests for judicial notice. The court will address how this new information affects disposition of the pending motion to dismiss in its order on that motion.

**I.   BACKGROUND**

On March 14, 2023, Bean Maine Lobster, Inc., Maine Lobstermen's Association, Inc.; Maine Coast Fishermen's Association, Inc.; Maine Lobster and Processing, LLC d/b/a Atwood Lobster, LLC; and Bug Catcher, Inc. (collectively, the Plaintiffs) filed a civil action against the Monterey Bay Aquarium Foundation (MBAF). *Compl.* (ECF No. 1). The complaint, which has not been amended, contains one count for defamation stemming from MBAF's 2022 assignment of a "red" rating

to Maine-caught lobster based on "significant risks of entanglement" to North Atlantic right whales posed by lobster fishing gear. *Compl.* ¶ 8. The Plaintiffs decry MBAF's red rating as false and argue the scientific data shows no observed right whale entanglements in Maine lobster gear since 2004. *Id.* ¶ 9.

On May 22, 2023, MBAF filed a motion seeking, in the alternative: 1) dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); 2) transfer of venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a); 3) dismissal pursuant to Maine's anti-SLAPP statute, 14 M.R.S. § 556; or 4) dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Def. Monterey Bay Aquarium Found.'s Mot. to Dismiss for Lack of Pers. Jurisdiction (Fed. R. Civ. P. 12(b)(2)) or, in the Alt., Transfer Venue Due to Forum Non Conveniens (28 U.S.C. 1404(a)), or Dismiss Under Maine's Anti-SLAPP Statute (14 M.R.S. § 556), or Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Fed. R. Civ. P. 12(b)(6))* (ECF No. 19) (*Def.'s Mot. to Dismiss*). On July 24, 2023, the Plaintiffs opposed MBAF's motion. *Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss, or in the Alt. to Change Venue* (ECF No. 24) (*Pls.' Dismiss Opp'n*). On August 24, 2023, MBAF replied. *Def. Monterey Bay Aquarium Found.'s Reply to Pls.' Opp'n to Mot. to Dismiss for Lack of Pers. Jurisdiction (Fed. R. Civ. P. 12(b)(2)) or, in the Alt., Transfer Venue Due to Forum Non Conveniens (28 U.S.C. 1404(a)), or Dismiss Under Maine's Anti-SLAPP Statute (14 M.R.S. § 556), or Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Fed. R. Civ. P. (12(b)(6))* (ECF No. 38) (*Def.'s Dismiss Reply*).

After taking the motion to dismiss under advisement but before reaching a disposition, the Court became aware that officials with the National Oceanographic and Atmospheric Administration (NOAA) had conducted a necropsy of a North Atlantic right whale found deceased in January 2024 on a beach in Massachusetts and, in October 2024, attributed its death to chronic entanglement in Maine lobster gear.  *See, e.g.,* Eric Russell, *Officials confirm 1st case of Maine lobster gear causing the death of endangered right whale*, PORTLAND PRESS HERALD, Oct. 2, 2024.  The Court immediately convened a telephonic conference with the parties on October 8, 2024 to discuss how they wished to proceed in light of the new information.  *Min. Entry* (ECF No. 45).

On October 11, 2024, MBAF moved to supplement the record on its motion to dismiss and requested that the Court take judicial notice of several NOAA and other government webpages documenting right whale entanglements.  *Def. Monterey Bay Aquarium Found.'s Mot. to Suppl. Rec. and Req. for Jud. Notice in Connection with Mot. to Dismiss* (ECF No. 46) (*Def.'s Mot. to Suppl.*).  Then, on October 28, 2024, MBAF filed a supplemental brief in support of its motion to dismiss, explaining its position on how the Court should consider the new information in the context of its motion to dismiss.  *Def. Monterey Bay Aquarium Found.'s Supp. Brief in Support of Mot. to Dismiss* (ECF No. 49) (*Def.'s Suppl. Brief*).

Also on October 28, 2024, the Plaintiffs filed their own motion to supplement the record and request for judicial notice, reiterating their opposition to the motion to dismiss in light of the new information and asking the Court to take judicial notice

3

of an additional NOAA publication "to add context to the NOAA website excerpts that [MBAF] has submitted." *Pls.' Mot to Suppl. the Rec. and Req. for Jud. Notice* at 1 (ECF No. 50) (*Pls.' Mot. to Suppl.*). The Plaintiffs also submitted their own brief articulating their position on the relevance of the new information to the Court's disposition of MBAF's motion to dismiss. *Pls.' Opening Br. Addressing Materials Attached to Def.'s Mot. to Suppl. Rec., and in Further Opp'n to Mot. to Dismiss* (ECF No. 52) (*Pls.' Suppl. Br.*).

On November 12, 2024, the Plaintiffs responded to MBAF's supplemental brief, arguing the Court should reject the motion to dismiss notwithstanding the new information concerning the January 2024 right whale death. *Pls.' Resp. to Def.'s Suppl. Br., and in Further Opp'n to Mot. to Dismiss* (ECF No. 53) (*Pls.' Suppl. Resp.*). That same day, MBAF filed its own response to the Plaintiffs' brief, reiterating its request that the Court dismiss the complaint based on both the original record and the new information. *Def. Monterey Bay Aquarium Found.'s Reply Br. Re: Suppl. Briefing in Support of Mot. to Dismiss* (ECF No. 54) (*Def.'s Suppl. Resp.*).

## II. THE PARTIES' POSITIONS

The motion sequence and briefing on supplementing the record encompasses two discrete issues: 1) whether the Court should permit supplementation of the record, and 2) if admitted, how the supplemental materials should affect disposition of the motion to dismiss. The parties spend a substantial portion of their filings discussing the second question of substantive effect. However, the Court limits the scope of its review in this order to the question presently before it: whether the Court

4

should permit supplementation of the record for the purposes of the motion to dismiss.

### A.   MBAF's Position on Supplementing the Record

MBAF moves to supplement the record with information "that the cause of death of a North Atlantic right whale found deceased on a beach in Massachusetts in January 2024 was entanglement in fishing gear used by Maine lobster fishermen." *Def.'s Mot. to Suppl.* at 2.  The Defendant asks the Court to take judicial notice of five webpages issued by government entities, in each case asserting that judicial notice of an official government website is proper under First Circuit precedent.  *Id.* at 2-6 (citing *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010)).  In a separate filing, MBAF avers that, pursuant to Federal Rule of Evidence 201, the Court may consider extrinsic evidence subject to judicial notice in the context of reviewing a motion to dismiss for failure to state a claim.  *Def.'s Suppl. Resp.* at 3 (citing *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013)).

MBAF requests judicial recognition of five government webpages, which it attaches as exhibits to its motion to supplement, as follows:

> 1)   the contents of the NOAA North Atlantic Right Whale Updates webpage, https://www.fisheries.noaa.gov/national/endangered-species-conservation/north-atlantic-right-whale-updates#right-whale-5120-found-dead-near-marthas-vineyard;
>
> 2)   the contents of the version of the NOAA North Atlantic Right Whale Updates webpage that was in existence on March 13, 2023, the day before Plaintiffs filed their complaint in this action, which has been obtained from the internet archive Wayback Machine;
>
> 3)   the contents of the NOAA 2017-2024 North Atlantic Right Whale Unusual Mortality Event webpage,

>   https://www.fisheries.noaa.gov/national/marine-life-distress/2017-2024-north-atlantic-right-whale-unusual-mortality-event;
>
>   4) the contents of the version of the NOAA 2017-2023 North Atlantic Right Whale Unusual Mortality Event webpage that was in existence on March 13, 2023, the day before Plaintiffs filed their complaint in this action, which has been obtained from the internet archive Wayback Machine;
>
>   5) the contents of the Maine Department of Marine Resources Whale Rules webpage, https://www.maine.gov/dmr/science/species-information/maine-lobster/whale-rules.

*Def.'s Mot. to Suppl.* at 2-6. Regarding the versions of government websites captured through the Wayback Machine software, the Defendant submits that other courts have accepted such records as judicially noticeable. *Id.* at 3-4 (citing *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 303 (D.C. Cir. 2023) ("The contents of webpages available through the Wayback Machine constitute facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned")).

MBAF adds that Plaintiffs cited to the NOAA North Atlantic Right Whale Unusual Mortality Event webpage in their complaint in support of their allegation that official records show "not a single record of right whale entanglement with Maine fishing gear resulting in serious injury or death." *Id.* at 5 (quoting *Compl.* ¶ 31 & n.17) (citation amended). The Plaintiffs' incorporation, MBAF says, provides a separate basis for judicial notice of this webpage. *Id.* (citing *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (on a motion to dismiss, the court may consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice") (alteration made by Defendant)).

B.      The Plaintiffs' Position on Supplementing the Record

In addition to maintaining their opposition to the motion to dismiss, the Plaintiffs request the Court take judicial notice of additional documentation published by NOAA as necessary and relevant context to the new information submitted by MBAF. *Pls.' Mot. to Suppl.* at 1. Specifically, the Plaintiffs move to admit a public message from NOAA Fisheries Leadership published as of April 21, 2022, as obtained through the Wayback Machine software, in which the NOAA Regional Administrator for the Greater Atlantic Region Michael Pentony stated:

> Most participants in the Northeast lobster and Jonah crab fishery are nearly finished with the needed gear modifications. However, ***unanticipated supply chain delays are preventing some of the fleet from fully coming into compliance***. I want to assure fishermen who are making good faith efforts to comply with these new measures but are not able to procure compliant gear that we understand the difficulty of their situation. ***We are working closely with our state and federal enforcement partners to implement a graduated enforcement effort that will focus on compliance assistance rather than civil penalties until we have determined that localized supply chain issues have been sufficiently resolved*** . . .. NOAA Fisheries is closely monitoring the challenges that some Northeast lobster and Jonah crab trap/pot fishermen are facing in their effort to comply with weak rope measures.

*Pls.' Suppl. Br.* at 6 (citing *Decl. of Clifford Ruprecht* (ECF No. 51), Attach. 1, *Compliance Assistance in Place to Support Fishermen Changing Gear to Protect Right Whales* at 2 (ECF No. 51-1) (*NOAA Compliance Letter*)) (emphasis added by Plaintiffs). Similarly to MBAF, the Plaintiffs aver that other federal courts have accepted the contents of webpages available through the Wayback Machine, *Pls.' Mot. to Suppl.* at 2 (citing *Walsh v. Teltech Sys., Inc.*, No. CV 13-13064-RWZ, 2015 U.S. Dist. LEXIS 191349, at *3 n.2 (D. Mass. July 30, 2015), *aff'd*, 821 F.3d 155 (1st Cir.

7

2016)), and further that the contents of official government websites are judicially noticeable. *Id.* (citing, e.g., *Gent*, 611 F.3d at 84 n.5).

Plaintiffs aver the Court retains the discretion to deny MBAF's request to consider extrinsic evidence on the pending motion to dismiss. *Pls.' Suppl. Brief* at 7 (citing *Freeman*, 714 F.3d at 36). Further, while Plaintiffs concede that the Court may take judicial notice of the contents of a government website, they maintain that taking such notice at the motion to dismiss stage does not extend to the purpose of establishing the truth of its contents. *Id.* (citing, e.g., *Torrens v. Lockheed Martin Servs. Grp., Inc.*, 396 F.3d 468, 473 (1st Cir. 2005)).

### III.   DISCUSSION

As presented by the parties, there are two questions before the Court in this order. First, there is a threshold question of whether to permit supplementation of the record with the documents submitted by the parties. Second, if permitted to supplement, the parties specifically present the supplemental information for consideration on the pending motion to dismiss; thus, there is an additional question of whether the Court may consider judicially noticed extrinsic evidence in its review of the motion to dismiss.

#### A.   Supplementing the Record

Beginning with the first question, the Court readily allows, based on applicable authorities and apparent agreement of the parties, the supplementation of the record.

Rule 15 of the Federal Rules of Civil Procedure provides: "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that

8

happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). The First Circuit has described the rule as "help[ing] courts and litigants to avoid pointless formality," explaining that "although causes of action accruing after the institution of a lawsuit usually can be filed as separate actions, supplementation under Rule 15(d) is often a more efficient mechanism for litigating such claims." *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 4 (1st Cir. 2015) (citing *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1186-87 (10th Cir. 2015)). For that reason, the First Circuit encourages the supplementation of pleadings pursuant to Rule 15 "when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." *Id.* (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1504, at 258-59 (3d ed. 2010)).

Neither party raises an apparent objection to supplementing the record with the new information. However, requesting leave to supplement is not a mere rubber-stamp exercise and the Court thus considers the merits of the parties' arguments in favor of supplementing. Motions to supplement "cannot be used to introduce a separate, distinct and new cause of action." *Benner v. Wells Fargo Bank, N.A.*, No. 2:16-cv-00467-NT, 2018 U.S. Dist. LEXIS 52716, at *42 (D. Me. Mar. 29, 2018) (quoting *Lath v. Manchester Police Dep't*, No. 16-CV-534-LM, 2017 U.S. Dist. LEXIS 68205, at *5 (D.N.H. May 4, 2017)). Further, "courts disfavor motions 'whose timing prejudices the opposing party by requiring a re-opening of discovery with additional

costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy.'" *Id.* (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

After review, the Court concludes that allowing the parties to supplement the record with the new information is consistent with the purpose of Rule 15. The parties do not dispute that the NOAA necropsy attributing the death of the right whale to Maine lobster fishing gear occurred after the complaint was filed in this case. *Compare Compl.* (filed on March 14, 2023), *with Def.'s Suppl. Brief* (noting the NOAA necropsy was published on October 2, 2024). Allowing the parties to supplement the record would also "promote the economic and speedy disposition of the entire controversy," *PharMerica Corp.*, 809 F.3d at 4, by permitting adjudication on a complete and up-to-date record in the first instance. One can easily imagine the inefficiency caused by the Court issuing a ruling based on an incomplete and outdated record, only for the disappointed party to move for reconsideration based on highly relevant facts not on the record at the time of pleading. Further, neither of the restrictions on supplemental pleadings applies to the present motions to supplement. Neither party seeks to introduce a new cause of action and, since trial has not yet been scheduled, no postponement of trial, significant or otherwise, would result from allowing the parties to supplement.

Thus, the Court grants the Defendant's motion to supplement the record with the five government webpages. *Def.'s Mot. to Suppl.* To ensure the record is supplemented "on just terms" in accordance with Rule 15, the Court also grants the

Plaintiffs' motion to supplement the record with the additional statement by the NOAA Regional Administrator for the Greater Atlantic Region. *Pls.' Mot. to Suppl.*

### B.     Considering Judicially Noticed Evidence on Motion to Dismiss

The Court now turns to the second question implicated by the parties' filings: whether it may consider the judicially noticed documents as extrinsic evidence in the context of the pending motion to dismiss.

The parties' arguments for judicial notice begin in lockstep: first, a court may take judicial notice of the content of a government website; and second, archived versions of government webpages obtained through Wayback Machine software are judicially noticeable. *See Def.'s Mot. to Suppl.* at 2-6; *Pls.' Mot. to Suppl.* at 2. Plaintiffs, however, continue to submit that additional guardrails apply to the Court's consideration of judicially noticeable materials at the motion to dismiss stage. Specifically, they argue the Court has discretion whether to consider such materials, and judicial recognition of extrinsic evidence at the motion to dismiss stage is limited to the record's existence, not the truth of its contents. *Pls.' Mot. to Suppl.* at 7 (citing *Freeman*, 714 F.3d at 36; *Torrens*, 396 F.3d at 473).

The Court agrees with the parties' shared assertions regarding the judicial noticeability of government webpages and use of the Wayback Machine software. Pursuant to Federal Rule of Evidence 201(b), "a court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." First Circuit caselaw is clear that Rule 201 encompasses the content of government webpages. *See Gent*, 611

F.3d at 84 n.5 ("tak[ing] judicial notice of the relevant facts provided on the website, which are 'not subject to reasonable dispute'"); *In re Fin. Oversight & Mgmt. Bd.*, 60 F.4th 9, 13 n.3 (1st Cir. 2023) (taking judicial notice of financial plan published on the Financial Oversight and Management Board for Puerto Rico's public website).

Further, the First Circuit affirmed a case where the district court used the Wayback Machine software to capture an undisputedly authentic version of historic webpages. *See Walsh*, 2015 U.S. Dist. LEXIS 191349, at *3 n.2, *aff'd,* 821 F.3d 155 (the district court took judicial notice of the content of certain archived Wayback Machine webpages "as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Dubliner, Inc. v. E. Coast Tavern Grp., Inc.*, 706 F. Supp. 3d 181, 194 (D. Mass. 2023) ("Here, the authenticity of the Wayback Machine menu captures submitted by Dubliner is not in dispute, and the captures are dispositive"); *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fl. 2019) (collecting cases in which federal courts took judicial notice of webpages available through the Wayback Machine).

The Plaintiffs correctly point out that the language of Rule 201(b) uses the permissive "may," rather than the obligatory "shall"; thus, the Court retains discretion over whether to take judicial notice of extrinsic evidence. However, Plaintiffs give no basis for why the Court should exercise its discretion to decline to take judicial notice of the requested materials in the present case. As previously discussed, a complete and current record aids the Court's efficient disposition of the

entire dispute, and thus the Court will take judicial notice of the government webpages for the purpose of considering the motion to dismiss.

Finally, though, Plaintiffs submit that judicially noticed government documents cannot be considered for the truth of their contents. In *Torrens v. Lockheed Martin Services Group, Inc.*, 396 F.3d 468, the First Circuit noted it was "free . . . to take judicial notice of the existence of government records," but that the government record "[was] relevant not for the truth of anything asserted in it but simply as a legally significant event, like a treaty or a will." *Id.* at 473. Applying *Torrens*, the District of Massachusetts recently wrote: "[i]t is only appropriate, however, to take judicial notice of government records for the fact that they exist or contain certain information and not for the truth of the facts asserted within them." *Pietrantoni v. Corcept Therapeutics Inc.*, 640 F. Supp. 3d 197, 205 (D. Mass. 2022) (citations omitted). The *Pietrantoni* Court thus granted the defendant's motion for judicial notice of publicly available government records "for the fact that they exist, the information they comprise, and their legal effect, but not the truth of their contents." *Id.*

Consistent with the precedent within the First Circuit, the Court will not consider the judicially noticed government records for their truth. However, the Court will apply this standard of review equally to both the Defendant's supplemental government webpages and the Plaintiff's supplemental statement by the NOAA Regional Administrator for the Greater Atlantic Region.

13

As a final note, the Court reiterates that by allowing the parties to supplement the record and granting their requests to take judicial notice, the Court takes no position at this time on the substantive effect of the new information on the disposition of the pending motion to dismiss.

## IV.   CONCLUSION

The Court GRANTS Defendant Monterey Bay Aquarium Foundation's Motion to Supplement Record and Request for Judicial Notice in Connection with Motion to Dismiss (ECF No. 46).

The Court also GRANTS the Plaintiffs' Motion to Supplement the Record and Request for Judicial Notice (ECF No. 50)

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of December, 2024